IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **CORPORAL TIMOTHY SHOCKLEY,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | C.A.No. 06-478-*** |
| : | |
| **GOVERNOR RUTH ANN MINNER,** : | |
| individually; and **COLONEL THOMAS F.** : | |
| **MACLEISH** in his official capacity as the : | |
| Superintendent, Delaware State Police; and : | |
| **DIVISION OF STATE POLICE,** : | |
| **DEPARTMENT OF SAFETY AND** : | **Jury Trial Demanded** |
| **HOMELAND SECURITY, STATE OF** : | |
| **DELAWARE,** : | |
| : | |
| **Defendants.** : | |

**FIRST AMENDED COMPLAINT (CORRECTED)**

1.  This is a civil action to remedy intentional gender discrimination by the Governor of the State of Delaware which proximately lead to the failure to promote plaintiff to the rank of Sergeant. Plaintiff seeks detailed judicial inquiry under intermediate or strict scrutiny analysis to insure that his personal right to equal protection of the laws is upheld, that discrimination odious to our nation's principles of equality is halted and an award of compensatory and punitive damages and injunctive relief because of invidious gender discrimination against him.  The Governor has denied plaintiff's right to be free of gender discrimination in violation of the Fourteenth Amendment of the U.S. Constitution.  Plaintiff was vetoed for promotion to the rank of Sergeant on the orders of the Governor because he was a male and she wanted a female to head her security detail. Plaintiff has direct and circumstantial evidence that animosity towards men was the reason the Governor vetoed his promotion.

1

## I. JURISDICTION

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), 28 U.S.C. §§ 2201 and 2202, and the Fourteenth Amendment to the U.S. Constitution. The cause of action arises under 42 U.S.C. § 1983. The claim arose in this judicial district.

## II. THE PARTIES

3. Plaintiff is a citizen of the United States and a resident of Delaware.

4. Ruth Ann Minner is currently the duly elected female Governor of the State of Delaware having assumed office in January, 2001. She is sued only in her individual capacity for money damages and other relief.

5. Colonel Thomas F. MacLeish is currently the Superintendent of the Delaware State Police and its highest ranking officer. He is sued only in his official capacity for injunctive relief.

6. Defendant Division of State Police, Department of Safety and Homeland Security, State of Delaware ("State Police") is an agency of the State of Delaware, which is only joined in this action for purposes of collecting attorneys' fees and costs.

## III. FACTS GIVING RISE TO THE ACTION

7. Plaintiff is a 14 year veteran of the State Police. He currently holds the rank of Corporal 2 and is assigned to patrol at Troop 5 in Bridgeville, Delaware.

8. He previously served on the Governor's Executive Protection Service Unit from December 2000 to May 2005, where he distinguished himself. He also graduated from the Dignitary Protection School in June 2001.

9. In 2001 he tested for promotion to the rank of Sergeant and he was found to be qualified. He then was placed on promotion Band D.

10. In September 2003 now retired Colonel L. Aaron Chaffinch decided to promote three

corporals from Band D to the rank of Sergeant: (A) plaintiff, who was being promoted to become the Non-Commissioned Officer in Charge ("NCOIC") of the Executive Protection Service Unit, which protects the Governor; (B) Douglas B. Hudson, who was being promoted to road sergeant; and (C ) Harlan R. Blades, who also was being promoted to road sergeant.

11.  In September 2003 Chaffinch and now retired Secretary of the Department of Safety and Homeland Security, James L. Ford Jr., met with the Governor to obtain her approval for these three promotions.

12.  Neither Chaffinch nor Ford told plaintiff or anyone else that they had decided to make a promotion to fill the long vacant NCOIC position of the Executive Protection Service Unit ("EPSU").  Instead, the decision was made to not tell anyone until after the promotion had been approved by the Governor.

13.  The Governor then vetoed the promotion of plaintiff and stated "Not in this Unit you're not.  I have the first female Executive Protection leader and that's how its going to be."

14.  At the time a less qualified and unpromotable female Trooper, not found on promotion Band D, was serving as the acting NCOIC of the Unit.  The Governor was referring to this female, who at the time was the only female serving as an Executive Protection head for any Governor in the entire United States.

15.  Thereafter, neither Chaffinch, Ford nor the Governor told anyone about this conversation.  Instead, a decision was made to hide the true reason for this promotion not being made and to continue to allow this unpromotable female Trooper to continue in her capacity as the acting NCOIC of the EPSU.

16.  A conscious decision was made to keep the very existence of the promotion and the true reason for it not being made from all those in the DSP out of fear of: causing discontent in

the ranks; upsetting the Delaware State Troopers Association; causing a gender discrimination lawsuit; and receiving negative publicity in the Delaware media.

17. As a result, the promotion band on which plaintiff was located was allowed to expire on December 31, 2003.

18. Eventually that female Trooper tested for Sergeant after the existing Band D expired at the end of December 2003. She then was promoted by the Governor to Sergeant in August of 2005 and became the permanent female NCOIC of the Unit which protects the Governor. But, unlike plaintiff, she never has graduated from the Dignitary Protection School, which Standard Operating Procedures of the Delaware State Police make a job requirement for the position of NCOIC of the Unit.

19. Thereafter, and immediately prior to Chaffinch's retirement from the DSP in April or May of 2005, plaintiff contacted Chaffinch and asked him why he had never been promoted above the rank of Corporal despite his outstanding qualifications and service record in the DSP.

20. Due to his pending retirement from service and troubled conscience, Chaffinch decided to come clean and explain to plaintiff the true reason he had never been promoted.

21. Chaffinch explained to plaintiff the previously unknown fact that in September 2003, the decision had been made to fill the long vacant NCOIC position in the EPSU.

22. Chaffinch explained to plaintiff the previously unknown fact that in September 2003, the decision had been made to promote plaintiff into this long vacant position because of his outstanding qualifications and service record in the DSP.

23. Chaffinch explained to plaintiff what the Governor had stated at the meeting discussed above.

24. Chaffinch explained to plaintiff that the Governor had vetoed his promotion because

4

he was a male Trooper and that she explicitly stated that she had wanted a female Trooper as the NCOIC of the EPSU.

25. Plaintiff was both shocked and surprised upon learning this.

26. This conversation in April or May of 2005 was the first time plaintiff had ever discovered, learned of or even suspected the existence of this promotion to the position of NCOIC of the EPSU.

27. This conversation in April or May of 2005 also was the first time plaintiff had ever discovered, learned of or even suspected that he had not received it because of his gender.

28. As a direct and proximate result of the actions of the defendants as detailed herein, plaintiff has suffered lost wages, earnings and benefits, he will suffer diminished earning capacity and receive less pension and other benefits now and upon his retirement, decreased employment and earnings opportunities, and other pecuniary losses, emotional pain, suffering, disappointment, anger, inconvenience, mental anguish, loss of enjoyment of life, mental and physical pain, anguish, humiliation, embarrassment, injury to reputation, and other non-pecuniary losses and injury.

## IV. ALLEGATIONS REGARDING THE DEFENDANTS' CONDUCT

29. The individual defendant's actions violated clearly established federal constitutional rights of which any official would have known, including decades of Third Circuit case law prohibiting gender discrimination against public employees.

30. At all times material hereto the individual defendant participated in, authorized, and sanctioned the federal constitutional deprivations described above.

31. At all times material hereto the individual defendant and her agents were acting under color of law. The federal constitutional deprivations described herein are fairly

attributable to the State.

32. The actions of the defendants and their agents or employees were deliberately, intentionally, willfully, purposefully, and knowingly done in violation of federal constitutional rights and because of the exercise of those rights.

33. The defendants either knew or showed a negligent or reckless disregard for the matter of whether their conduct violated federal constitutional rights.

34. Their actions were outrageous and taken with evil motive, in bad faith, out of personal animus and without any reasonable grounds to support them.

35. Their actions were wanton and malicious or taken with reckless indifference to federal constitutional rights.

36. The exercise of rights under the U.S. Constitution made a difference in all actions adverse to plaintiff.

37. The exercise of these rights was a motivating, substantial or determinative factor in all actions adverse to plaintiff.

38. The defendants did not reasonably believe that the actions they took were necessary to accomplish any legitimate governmental purpose.

39. The defendants' actions were motivated by bias, bad faith, and improper motive.

40. The defendants' actions constitute an abuse of governmental power.

41. The defendants' actions do not further any narrowly drawn important, substantial or compelling governmental interest.

42. The defendants' actions are not so reasonable as to further any governmental interest asserted and do not closely fit the goal of serving those governmental interests.

**COUNT I (PROMOTION)**

43. Plaintiff repeats and realleges paragraphs 1 - 29 set out above.

### A.  DIRECT EVIDENCE ANALYSIS

44. Plaintiff has direct evidence of gender discrimination against him.  Such statements or other evidence reflect a discriminatory bias against male employees who attempt to head the Executive Service Protection Unit for a female Governor. They provide direct evidence that the decision maker placed substantial negative reliance on an illegitimate criterion in reaching the challenged decision.

45. Alternatively, impermissible gender based factors, as well as permissible factors, were considered in the decision making process.

46. Plaintiff is within a protected gender group, that is, he is male.

47. His promotion was vetoed.

48. His gender was the motivating, determinative or even the sole reason why he was not promoted.

49. The defendants cannot prove by a preponderance of the evidence that if they had not used gender based or suspect classifications they still would not have promoted plaintiff.

### B.  PRETEXT ANALYSIS

50. Plaintiff was qualified for promotion to Sergeant and to be the NCOIC of the Unit.

51. At all times material hereto he was a diligent, honest, and loyal employee who always performed his job in an exemplary manner.

52. Plaintiff sought promotion to Sergeant.

53. A vacancy for promotion to sergeant existed.

54. Plaintiff is male.

55. The promotion was vetoed by a female Governor so that she could ultimately place a

less qualified female in the position for which plaintiff had been selected.

56. Any legitimate non-discriminatory reason offered by the defendants for their actions is a pretext for intentional and purposeful discrimination based on gender. Any reason offered by the defendants is unworthy of credence since plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the proffered legitimate reasons that a reasonable fact finder can rationally find them unworthy of credence and hence infer that the defendants did not act for the asserted non-discriminatory reason.

57. Alternatively, plaintiff can demonstrate pretext because the natural probative force of all direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment actions was the gender of the plaintiff.

**(a). CIRCUMSTANTIAL AND DIRECT EVIDENCE OF INTENT**

58. The circumstantial and direct evidence of intent proves invidious discriminatory purpose.

59. There are numerous examples of direct evidence which through words or actions reveal the discriminatory purpose of the Governor in favoring a female employee for the promotion at issue. For example, the statement found in paragraph 12 above, by its context and inflection, reflects discriminatory animus against males.

60. Additionally, the specific sequence of events leading up to the challenged promotion also evidences discriminatory intent.

61. Also, in the handling of this promotion there were departures which occurred from the normal procedural sequence.

62. Moreover, the female who was ultimately promoted into the position at issue had markedly less educational qualifications for the job.

63. Her promotion even violated the written Standard Operating Procedures of the Delaware State Police because she did not possess an educational certificate in dignitary protection, with related training.

64. Given the totality of the circumstances, a reasonable fact-finder could conclude that the defendants intentionally treated plaintiff less favorably than others because of his gender.

65. Plaintiff was illegally denied a promotion because of his gender.

66. Plaintiff's constitutional right to the equal protection of the law and to be free of gender discrimination has been denied under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C.§ 1983.

Wherefore, plaintiff prays that the Court:

I. Enter judgment against the defendants.

II. Enter a declaratory judgment declaring the acts of the defendants to be a violation of plaintiff's constitutional rights.

III. Enter a judgment against the individual defendant for compensatory damages, including lost wages, back pay, pension and other benefits, for future or front pay, loss of earning capacity, emotional distress, humiliation, embarrassment, and injury to reputation.

IV. Enter a judgment against the individual defendant for punitive damages.

V. Issue a mandatory injunction directing defendant MacLeish to promote plaintiff immediately to the rank of Sergeant in the Delaware State Police.

VI. Award front pay until plaintiff can be promoted.

VII. Issue a reparative injunction directing that upon retirement plaintiff's pension and other benefits be calculated as if he had been promoted to the rank of Sergeant in 2004.

VIII. Issue a reparative injunction directing that the Governor place a signed document in plaintiff's personnel file indicating that he was qualified to be promoted to the rank of Sergeant, in 2004, and that but for illegal conduct by the Governor he would have been promoted to that rank on that date, and apologizing to plaintiff

      for violating his constitutional rights.

IX.     Enjoin the defendants from retaliating against plaintiff.

X.     Award plaintiff attorney's fees, costs and pre and post judgment interest for this action.

XI.     Require such other and further relief as the Court deems just and proper under the circumstances.

      **THE NEUBERGER FIRM, P.A.**

      /s/ Stephen J. Neuberger
      **THOMAS S. NEUBERGER, ESQUIRE (#243)**
      **STEPHEN J. NEUBERGER, ESQUIRE (#4440)**
      Two East Seventh Street, Suite 302
      Wilmington, DE  19801
      (302) 655-0582
      TSN@NeubergerLaw.com
      SJN@NeubergerLaw.com

Dated: May 29, 2007      Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on May 29, 2007, I electronically filed this **Pleading** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

>Barry M. Willoughby, Esquire
>William W. Bowser, Esquire
>Young Conaway Stargatt & Taylor, LLP
>The Brandywine Building, 17th Floor
>1000 West Street, P.O. Box 391
>Wilmington, DE 19899-0391
>BWilloughby@ycst.com
>WBowser@ycst.com
>
>Ralph K. Durstein III, Esquire
>Department of Justice
>Carvel State Office Building
>820 N. French Street
>Wilmington, DE 19801
>Ralph.Durstein@state.de.us

>/s/ Stephen J. Neuberger
>**STEPHEN J. NEUBERGER, ESQ.**

Shockley/PLEADINGS/First Amended Complaint (Corrected).final