IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CORPORAL TIMOTHY SHOCKLEY,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A.No. 06-478-*** |
| | : | |
| **GOVERNOR RUTH ANN MINNER, individually;** | : | |
| **and COLONEL THOMAS F. MACLEISH in his** | : | |
| official capacity as the Superintendent, Delaware State | : | |
| Police; and **DIVISION OF STATE POLICE,** | : | |
| **DEPARTMENT OF SAFETY AND HOMELAND** | : | |
| **SECURITY, STATE OF DELAWARE,** | : | Jury Trial Demanded |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

**THE NEUBERGER FIRM, P.A.**
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Attorneys for Plaintiff

Dated: July 6, 2007

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDING ................................................................. 1

SUMMARY OF THE ARGUMENT ..................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 1

 A. Plaintiff ................................................................................................................. 1

 B. The Longstanding Supervisory Vacancy on the Governor's Executive Protection Service Unit ......................................................................................... 2

 C. The Acting Supervisor Was Unqualified for the Position She Held ................ 2

 D. Colonel Chaffinch Decides to Fill the Position and Promote Plaintiff ............ 2

 E. The Governor Vetoes Plaintiff's Promotion Because He is Male ................... 3

 F. The Governor Decides to Hide the Very Existence Of the Promotion ........... 3

 G. Plaintiff's Eligibility for Promotion Expires ................................................... 3

 H. After the Promotion List Expired, the Governor Promoted the Female Trooper ............... 3

 I. Colonel Chaffinch Is Overcome By His Conscience and Tells Plaintiff What Happened ............................................................................................... 3

 J. This is the First Time That Anyone Learned of the Existence Of or Opportunity For the Aborted September 2003 Promotion ................................ 4

 K. Plaintiff Then Filed This Lawsuit Within Two Years ..................................... 4

ARGUMENT .......................................................................................................................... 4

 I. STANDARD OF REVIEW ................................................................................ 4

 II. THIS ACTION IS TIMELY UNDER THE DISCOVERY RULE BECAUSE NEITHER PLAINTIFF NOR ANYONE ELSE LEARNED OF THE EXISTENCE OF OR OPPORTUNITY FOR THE SECRET SEPTEMBER 2003 PROMOTION UNTIL APRIL/MAY 2005 ................................................. 5

  A. The Basics. ............................................................................................. 5

  B. The Claim Accrued in April/May 2005 When Plaintiff Learned of the Existence of the Secret September 2003 Promotion Opportunity ............ 6

III. ALTERNATIVELY, THIS ACTION IS TIMELY UNDER THE DOCTRINE OF EQUITABLE TOLLING BECAUSE DEFENDANTS ACTIVELY MISLED AND LULLED PLAINTIFF INTO INACTION BY HIDING THE VERY EXISTENCE OF THE SECRET SEPTEMBER 2003 PROMOTION FROM EVERYONE ............... 7

    A. The Basics ........................................................................................................ 7

    B. Defendant Actively Misled Plaintiff By Hiding the Very Existence of the Promotion Opportunity. ...................................................................................... 8

    C. Defendant Lulled Plaintiff Into Inaction By Concealing the Very Existence of the Promotion Opportunity ............................................................................ 8

IV. THE REMAINDER OF THE RED-HERRING DEFENSE ARGUMENTS ARE EQUALLY WITHOUT MERIT ..................................................................................... 9

    A. Introduction ....................................................................................................... 9

    B. The Specific Unlawful Employment Practice At Issue is the Denial of the September 2003 Promotion ................................................................................. 9

    C. The Inapposite Defense Legal Authority .......................................................... 10

CONCLUSION ................................................................................................................ 12

## TABLE OF AUTHORITIES

**Cases**   **Page**

Bridgeport Music, Inc. v. Diamond Time, Ltd., 371 F.3d 883 (6th Cir. 2004) ........................... 8

Bronze Shields, Inc. v. N.J. Dept. of Civil Service, 667 F.2d 1074 (3d Cir. 1981) ................. 10

Conley v. Gibson, 355 U.S. 41 (1957) ....................................................................................... 5

Del. State College v. Ricks, 449 U.S. 250 (1980) .................................................................... 10

Emerson v. Thiel College, 296 F.3d 184 (3d Cir. 2002) ........................................................... 4

Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005) ....................................................................... 5

Jackson v. Rockford Hous. Auth., 213 F.3d 389 (7th Cir. 2000) .............................................. 8

Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250 (3d Cir. 1994) ....................... 4-5

Kulwicki v. Dawson, 969 F.2d 1454 (3d Cir. 1992) .................................................................. 4

LaVallee Northside Civic Ass'n v. Virgin Islands Coastal Zone Management Commission,
    866 F.2d 616 (3d Cir. 1989) ............................................................................................ 8-9

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993) ......... 5

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ..................................................... 11

Meyer v. Riegel Products Corp., 720 F.2d 303 (3d Cir. 1983) ................................................. 8

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380 (3d Cir. 1994) ....................... 5-8

Podobnik v. U.S. Postal Service, 409 F.3d 584 (3d Cir. 2005) ................................................. 6

Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061 (3d Cir. 1996) (en banc) ........ 11

Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002) ................................................................ 5

**Rules**

Fed.R.Civ.P. 8(a)(2) .................................................................................................................. 5

## NATURE AND STAGE OF THE PROCEEDING

This is a civil action to remedy intentional gender discrimination by the Governor of the State of Delaware which proximately led to the failure to promote plaintiff to the rank of Sergeant. Plaintiff seeks detailed judicial inquiry under intermediate or strict scrutiny analysis to insure that his personal right to equal protection of the laws is upheld, that discrimination odious to our nation's principles of equality is halted and an award of compensatory and punitive damages and injunctive relief because of invidious gender discrimination against him. The Governor has denied plaintiff's right to be free of gender discrimination in violation of the Fourteenth Amendment of the U.S. Constitution. Plaintiff was vetoed for promotion to the rank of Sergeant on the orders of the Governor because he was a male and she wanted a female to head her security detail. Plaintiff has direct and circumstantial evidence that animosity towards men was the reason the Governor vetoed his promotion.

This is plaintiff's Answering Brief in opposition to defendants' motion to dismiss.

## SUMMARY OF THE ARGUMENT

This action is timely under long recognized federal tolling principles. First, because neither plaintiff nor anyone else learned of the existence of or opportunity for the secret September 2003 promotion until April/May 2004, the discovery rule tolled the statute of limitations. Alternatively, this action is timely under the doctrine of equitable tolling because defendants actively misled and lulled plaintiff into inaction by hiding the very existence of the secret September 2003 promotion.

## STATEMENT OF FACTS

**A. Plaintiff.** Plaintiff is a 14 year veteran of the State Police. He currently holds the rank of Senior Corporal and is assigned to patrol at Troop 5 in Bridgeville, Delaware. (¶ 7).[1] He is a

---

[1] All "¶ __" citations are to Plaintiff's First Amended Complaint - D.I. 17.

diligent, honest, and loyal employee who always performed his job in an exemplary manner. (¶ 51).

From December 2000 to May 2005, he served on the Governor's Executive Protection Service Unit ("EPSU"), where he distinguished himself by his service. During that same time frame, in June 2001, he graduated from the Dignitary Protection School. (¶ 8). Later in 2001, he tested for promotion to the rank of Sergeant and he was found to be qualified. He then was placed on promotion Band D. (¶¶ 9, 50). This promotion band, and thus plaintiff's eligibility for promotion, was set to expire on December 31, 2003. (¶ 17).

**B. The Longstanding Supervisory Vacancy on the Governor's Executive Protection Unit.** The supervisory sergeant position of non-commissioned officer in charge ("NCOIC") of the EPSU had been vacant for a long time. (¶¶ 53, 21, 10). Plaintiff was qualified for this position. (¶ 50).

**C. The Acting Supervisor Was Unqualified for the Position She Held.** In the absence of a supervisory sergeant, a female corporal was serving as the acting NCOIC of the EPSU. At the time, she was the only female police officer serving as an Executive Protection head for any Governor in the entire United States (¶ 14), a fact the Governor was very proud of. (¶ 13).

However, this female officer was unqualified for this position. Her holding the position violated the Delaware State Police Standard Operating Procedures because she had never graduated from Dignitary Protection School, which the SOP's made a job requirement. She also was ineligible to be promoted because she was not found on any promotional band. (¶¶ 18, 14, 15, 55, 62).

**D. Colonel Chaffinch Decides to Fill the Position and Promote Plaintiff.** In September 2003, Col. Chaffinch decided to fill this long vacant supervisory position and told then Secretary James L. Ford, Jr. about his decision. However, neither Chaffinch nor Ford told anyone else that they had decided to make a promotion to fill this long vacant position. Instead, the decision was

made to not tell anyone until after the promotion had been approved by the Governor. (¶¶ 21, 10, 12, 19).

**E. The Governor Vetoes Plaintiff's Promotion Because He is Male.** Chaffinch and Ford then met with the Governor, who vetoed plaintiff's promotion. The Governor's exact words were - "Not in this Unit you're not. I have the first female Executive Protection leader and that's how its going to be." (¶¶ 11, 13). The Governor was referring to her unqualified, untrained and ineligible acting female NCOIC. (¶ 14).

**F. The Governor Decides to Hide the Very Existence of the Promotion.** The Governor, knowing that her refusal to promote plaintiff because of his gender was blatantly illegal, decided that both (1) the true reason for this denial and (2) the very existence of the promotion opportunity itself must be kept secret from everyone. This conscious decision was made out of fear of: causing discontent in the ranks; upsetting the Delaware State Troopers Association; causing a gender discrimination lawsuit; and receiving negative publicity in the Delaware media. (¶ 15-16).

Accordingly, Chaffinch and Ford followed the Governor's orders and agreed to never tell anyone about either of these things. (¶ 15).

**G. Plaintiff's Eligibility for Promotion Expires.** On December 31, 2003, plaintiff's eligibility for promotion expired. (¶ 17).

**H. After the Promotion List Expired, the Governor Promoted the Female Trooper.** Thereafter, in August 2005, the Governor ordered the female corporal referenced above promoted to sergeant and NCOIC of the EPSU. However, she still was not qualified to hold this position and her promotion to it continued to violate the DSP's own SOPs. (¶ 18).

**I. Colonel Chaffinch is Overcome by His Conscience and Tells Plaintiff What Happened.** Eventually however, on the eve of his retirement, Chaffinch's conscience got the better of him. (¶ 20). In April or May of 2005, plaintiff contacted the soon retiring Colonel and asked

-3-

him why he had never been promoted above the rank of Corporal despite his outstanding qualifications and service record. (¶ 19).

Chaffinch then decided to come clean and explain to plaintiff the true reason he had never been promoted. (¶ 20). He explained to plaintiff the previously unknown fact that in September 2003, he had decided to fill the long vacant NCOIC position in the EPSU and also to promote plaintiff to fill it. (¶¶ 21-22). Chaffinch continued and explained to plaintiff what the Governor had stated at the meeting discussed above, how she had vetoed his promotion because he was a male Trooper and that she explicitly stated that she wanted a female Trooper as the NCOIC of the EPSU. (¶¶ 23-24).

**J. This is the First Time That Anyone Learned of the Existence Of or Opportunity For the Aborted September 2003 Promotion.** Plaintiff was both shocked and surprised upon learning this. (¶ 25). This conversation was the first time that plaintiff or anyone else had ever discovered, learned of or even suspected (1) the existence or opportunity for this promotion in September 2003 and (2) that he had not received it because of his gender. (¶¶ 12, 21, 19, 26, 27).

**K. Plaintiff Then Filed This Lawsuit Within Two Years.** Within two years of April 2005, plaintiff filed this lawsuit on August 4, 2006. (See D.I. 1).

## ARGUMENT

I.  **STANDARD OF REVIEW.**

"A complaint will withstand an attack under Federal Rule of Civil Procedure 12(b)(6) if the material facts as alleged, in addition to inferences drawn from those allegations, provide a basis for recovery." Emerson v. Thiel College, 296 F.3d 184, 188 (3d Cir. 2002). The trial court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); see Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992) ("the plaintiff must be given the benefit of every favorable

inference to be drawn"). A "case should not be dismissed ... unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations." Jordan, 20 F.3d at 1261.

The United States Supreme Court has repeatedly and explicitly rejected heightened pleadings standards and instead unanimously reaffirmed its long time holding that Fed.R.Civ.P. 8(a)(2) indeed means what it clearly says and that the required "short and plain statement of the claim" must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002); accord Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993); Conley v. Gibson, 355 U.S. 41, 47 (1957); Evancho v. Fisher, 423 F.3d 347, 351-353 (3d Cir. 2005). "The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." Swierkiewicz, 534 U.S. at 514. Notice pleading "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Id. at 512. Given this simplified notice pleading standard, "a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Id. at 514 (internal punctuation omitted).

## II. THIS ACTION IS TIMELY UNDER THE DISCOVERY RULE BECAUSE NEITHER PLAINTIFF NOR ANYONE ELSE LEARNED OF THE EXISTENCE OF OR OPPORTUNITY FOR THE SECRET SEPTEMBER 2003 PROMOTION UNTIL APRIL/MAY 2005.

**A. The Basics.** "As a general rule, the statute of limitations begins to run when the plaintiff's cause of action accrues." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994). The "accrual date is not the date on which the wrong that injures the plaintiff occurs, but the date on which the plaintiff *discovers* that he or she has been injured." Id. (emphasis in original). The "discovery rule" exists for those "occasions when an aggrieved person does not

discover the occurrence of the alleged unlawful employment practice until some time after it occurred." Id. at 1386. This is such a case. In such situations, the rule "postone[s] the beginning of the statutory limitations period from the date when the alleged unlawful employment practice occurred, to the date when the plaintiff actually discovered he or she had been injured." Id.

"A claim accrues ... as soon as a potential claimant either is aware, or should be aware, of the existence of and source of an injury." Id.; accord Podobnik v. U.S. Postal Service, 409 F.3d 584, 590 (3d Cir. 2005). The "'polestar' of the discovery rule is not the plaintiff's actual knowledge of injury, but rather whether the knowledge was known, or through the exercise of reasonable diligence, knowable to the plaintiff." Oshiver, 38 F.3d at 1386.

"In short, the discovery rule functions to delay the initial running of the statutory limitations period, but only until the plaintiff has discovered or, by exercising reasonable diligence, should have discovered (1) that he or she has been injured, and (2) that this injury has been caused by another party's conduct." Id.; accord Podobnik, 409 F.3d at 590.

**B. The Claim Accrued in April/May 2005 When Plaintiff Learned of the Existence of the Secret September 2003 Promotion Opportunity.** Application of the discovery rule demonstrates that plaintiff's claim is timely. Plaintiff's claim did not accrue until he "discover[ed] that he ... ha[d] been injured." Oshiver, 38 F.3d at 1385. Here, that did not occur until he learned from Chaffinch in April/May 2005 of the very existence and opportunity for this September 2003 promotion, the existence of which had been kept secret by order of the Governor. (¶¶ 21, 12, 15-16).

This is not a case where a plaintiff was deprived of something he once had and so would have notice of when he lost it. Plaintiff was not fired, laid off or discharged - he did not lose his job. Cf. Oshiver, 38 F.3d at 1390-91 (denying application of the discovery rule to discharged employee because she knew of the injury - her discharge - at the moment she was discharged). He was not demoted - he did not lose any job responsibilities. Cf. Podobnik, 409 F.3d at 590-91

-6-

(denying application of the discovery rule to employee whose job responsibilities were being reduced because he knew of his injury - the reduction in his job responsibilities - at the moment he was told of the reduction). Instead, plaintiff was denied promotion to a position that neither he nor anyone else knew was going to be filled. (¶¶ 21, 12, 15-16). He never knew of the adverse action against him - that he had been denied promotion to the position of NCOIC of the EPSU. It was never announced that the DSP was seeking to fill this long vacant position. Instead, Chaffinch consciously kept his decision a secret until he spoke to the Governor, who after rejecting plaintiff because of his gender, ordered that both her decision and the very existence of the opportunity for the promotion to kept secret so that no one would discover it. (¶¶ 21, 12, 15-16).

Simply put, one cannot challenge the denial of a promotion that one does not know exists. Neither plaintiff nor anyone else learned of the existence of or opportunity for this promotion until April/May 2005. Accordingly, his claim did not accrue until that time. Because this action was filed less than two years after this occurrence,[2] (see D.I. 1), plaintiff's case was timely filed.

### III.   ALTERNATIVELY, THIS ACTION IS TIMELY UNDER THE DOCTRINE OF EQUITABLE TOLLING BECAUSE DEFENDANTS ACTIVELY MISLED AND LULLED PLAINTIFF INTO INACTION BY HIDING THE VERY EXISTENCE OF THE SECRET SEPTEMBER 2003 PROMOTION FROM EVERYONE.

**A. The Basics.** Alternatively, if the claim is found to have accrued in September 2003, this action is nevertheless timely under the doctrine of equitable tolling because of defendant's active misleading of plaintiff and concealment of the relevant facts. Underlying the equitable tolling doctrine is "the fundamental rule of equity that a party should not be permitted to profit from its own wrongdoing." Oshiver, 38 F.3d at 1388; accord id. at 1392.

"Equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed." Oshiver, 38 F.3d at 1387. There are "three principal,

---

[2] Plaintiff agrees that this action is governed by Delaware's two year statute of limitations for personal injuries.

-7-

though not exclusive, situations in which equitable tolling is appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Id.

**B. Defendant Actively Misled Plaintiff by Hiding the Very Existence of the Promotion Opportunity.** Equitable tolling may apply "when it appears that (1) the defendant actively misled the plaintiff respecting the reason for the plaintiff's discharge, and (2) this deception caused the plaintiff's non-compliance with the limitations provision." Oshiver, 38 F.3d at 1387.

Here, the Governor ordered the only two people with knowledge of the promotional opportunity to keep both it and her decision not to promote plaintiff a secret so that no one would discover it. (¶¶ 21, 12, 15-16). In affirmatively hiding the very existence of the promotion opportunity, the defendant "actively misled" plaintiff as to the reason for the for his non-promotion - specifically, that no such promotional opportunity even existed. Id. Plaintiff could not challenge the denial of a promotion that he did not know existed. It is well established that the "[a]ctive steps triggering equitable estoppel include hiding evidence." Jackson v. Rockford Hous. Auth., 213 F.3d 389, 394 (7th Cir. 2000); accord Bridgeport Music, Inc. v. Diamond Time, Ltd., 371 F.3d 883, 891 (6th Cir. 2004). Thus, this deception also caused plaintiff's non-compliance with the limitations period and triggers the doctrine of equitable tolling. Oshiver, 38 F.3d at 1387.

**C. Defendant Lulled Plaintiff Into Inaction by Concealing the Very Existence of the Promotion Opportunity.** "In circumstances where the defendant's conduct of concealment or misleading has placed the plaintiff at a disadvantage ... [and] unfairly lulled the plaintiff into inaction, the defendant may not profit by his wrongful conduct." LaVallee Northside Civic Ass'n v. Virgin Islands Coastal Zone Management Commission, 866 F.2d 616, 625 (3d Cir. 1989); see Meyer v. Riegel Products Corp., 720 F.2d 303, 307 (3d Cir. 1983) (noting that cases may arise

"where the employer's own acts or omissions have lulled the plaintiff into foregoing prompt attempts to vindicate his rights.").

Here, defendant's active concealment "unfairly lulled plaintiff into inaction" and equity requires that "defendant may not profit" from her wrongful conduct. LaVallee, 866 F.2d at 625. Had defendant not ordered concealment of the very existence of the promotion and the Governor's veto of plaintiff's promotion to that position, then plaintiff would have taken action by discovering these things. But by ordering that these opportunities and events be forever hidden, the Governor ensured they would not be discovered in a timely manner and thus unfairly lulled plaintiff into inaction. Such unusual and extraordinary circumstances require that defendant not be permitted to benefit from her wrongful conduct, so the doctrine of equitable estoppel is triggered. Oshiver, 38 F.3d at 1387.

### IV. THE REMAINDER OF THE RED-HERRING DEFENSE ARGUMENTS ARE WITHOUT MERIT.

**A. Introduction.** As review of the defense opening brief makes clear, defendants have chosen to virtually ignore the Third Circuit's tolling precedent discussed in Arguments II and III above. Instead, they argue several irrelevant legal issues which, as both a matter of logic and law, do not apply to our present case.

**B. The Specific Unlawful Employment Practice At Issue is the Denial of the September 2003 Promotion.** As review of this brief and the Complaints filed in this case makes clear, plaintiff is not challenging the vague, nebulous and general decision not to promote him off of the band in the 2001-2003 time frame. Instead, the adverse action being specifically challenged is the Governor's secret decision and refusal to promote him to the rank of sergeant and the specific position as NCOIC of the EPSU in September 2003.

As review of the very precedent selectively cited by the defense makes clear, "[d]etermining the timeliness of ... [plaintiff's lawsuit] requires us to identify precisely the 'unlawful

employment practice' of which he complains." Del. State College v. Ricks, 449 U.S. 250, 257 (1980); accord Bronze Shields, Inc. v. N.J. Dept. of Civil Service, 667 F.2d 1074, 1083 (3d Cir. 1981). The precise unlawful employment practice being challenged by plaintiff is the Governor's secret veto of his promotion to become the NCOIC of the EPSU. (¶¶ 11, 13). As discussed in the Arguments above, this occurred in September 2003 and as a direct and proximate result of the Governor's explicit order of secrecy, was not discovered by plaintiff until April/May 2005 when Col. Chaffinch was overcome by his nagging conscience.

      **C. The Inapposite Defense Legal Authority.** Unlike the cases cited by the defense, ours it not, and never has been, a continuing violations doctrine case.[3] Ours is not a case where plaintiff was denied placement on a hiring or promotion list and is thereafter challenging that initial exclusion as well as all subsequent hirings or promotions, or some variation on that general theme. Instead, this is a typical, run-of-the-mill promotion case where a specific promotion is being challenged. The only out of the ordinary facts relate to the defense assertions that plaintiff should have somehow challenged the denial of a promotion that he never knew existed. The extraordinary facts in this case relate to the great efforts taken by the Governor to hide both the very existence of the September 2003 promotion and her subsequent gender-motivated veto of plaintiff for it - which have given rise to the long recognized federal tolling principles discussed in Arguments II and III above.

      Taking the defense argument to its logical conclusion would lead to every case filed by a plaintiff on a promotion list to be rejected on merits grounds. Defendants make the overbroad assertion that plaintiff's claim accrues when the general eligibility list expires, not when the specific promotion pass-over occurs. But this approach is wrong because it ignores Supreme

---

    [3] Of course, as review of the same precedent selectively cited by the defense makes clear, federal tolling principles can even apply to continuing violations cases. See, e.g. Bronze Shields, 667 F.2d at 1084-85 (discussing equitable tolling but finding it inapplicable under the particular facts of the case).

Court employment law precedent which dictates the contrary. A plaintiff who files such a lawsuit would inevitably be rejected by the Court as a matter of law because a specific promotional decision must be challenged. Otherwise, a plaintiff could never meet his prima facie case burden under <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), which requires that there be a specific position to which the plaintiff applied or was considered and for which he was qualified but was denied. <u>Id.</u> at 802; <u>Sheridan v. E.I. DuPont de Nemours and Co.</u>, 100 F.3d 1061, 1066 n.5 (3d Cir. 1996) (en banc). It is from notice of this specific denial that the statute of limitations usually begins to run, unless one of the two recognized tolling exceptions apply. When one does apply or is considered, as in our present case, the statute is tolled. (<u>See</u> Arguments II and III above).

The law simply does not permit a plaintiff to file lawsuits willy-nilly if they are not promoted off of a promotion list. Instead, first a specific vacancy which the employer was seeking to fill must exist and that becomes the position at the center of the lawsuit. But in our present case, the very fact of the decision to fill the longstanding NCOIC vacancy was unknown. When Col. Chaffinch and Secretary Ford finally decided to fill this long vacant position, they consciously chose not to tell anyone of this fact until after the Governor gave her approval, but that day never came because the Governor vetoed the promotion. But that was not all. Then in an attempt to avoid: upsetting the Trooper's union; stirring up discontent in the ranks; and escaping even more negative publicity in the press arising from a lawsuit, the Governor ordered that the very existence of and opportunity for the NCOIC promotion be kept secret forever. No doubt this was done so that if plaintiff did somehow later discover her illicit actions, he would be foreclosed from doing anything about it by the statute of limitations. Unfortunately for the Governor, she did not consider the basic equitable principles underlying equitable tolling and the discovery rule which tolled the statute of limitations in our present case.

## **CONCLUSION**

For the reasons discussed above, the defense motion should be denied in its entirety.

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**

/s/ Stephen J. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: July 6, 2007                    Attorneys for Plaintiff

-13-

**CERTIFICATE OF SERVICE**

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on July 6, 2007, I electronically filed this **Brief** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

>Barry M. Willoughby, Esquire
>Young Conaway Stargatt & Taylor, LLP
>The Brandywine Building, 17th Floor
>1000 West Street, P.O. Box 391
>Wilmington, DE 19899-0391
>BWilloughby@ycst.com
>WBowser@ycst.com
>
>Ralph K. Durstein III, Esquire
>Department of Justice
>Carvel State Office Building
>820 N. French Street
>Wilmington, DE 19801
>Ralph.Durstein@state.de.us

>/s/ Stephen J. Neuberger
>**STEPHEN J. NEUBERGER, ESQ.**

Shockley / Briefs /Motion to Dismiss AB.FINAL