IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORPORAL TIMOTHY SHOCKLEY, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :  C.A.No. 06-478-JJF |
| | : |
| GOVERNOR RUTH ANN MINNER, | : |
| individually; and COLONEL THOMAS F. | : |
| MACLEISH in his official capacity as the | : |
| Superintendent, Delaware State Police; and | : |
| DIVISION OF STATE POLICE, | : |
| DEPARTMENT OF SAFETY AND | : |
| HOMELAND SECURITY, STATE OF | : |
| DELAWARE, | : |
| | : |
| Defendants. | : |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR REARGUMENT OR, ALTERNATIVELY, CERTIFICATION FOR INTERLOCUTORY APPEAL**

For the reasons set forth below, Plaintiff respectfully requests that the Court deny the defense motion (D.I. 24) in its entirety.

**A. Motion for Reconsideration Standards.** The standards governing motions for reconsideration are well-known to this Court. See Dobrich v. Indian River Sch. Dist., 432 F.Supp.2d 445, 448 (D.Del. 2006); Kelly v. MBNA Am. Bank, 2007 WL 4233671, *2 (D.Del. Nov. 29, 2007). "The purpose of a motion for reconsideration is to 'correct manifest errors of law or fact or to present newly discovered evidence.'" Dobrich, 432 F.Supp.2d at 448 (quoting Max's Seafood Café By Lou Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir.1999)). "The purpose of the motion for reconsideration is not to rehash arguments already briefed." Dobrich, 432 F.Supp.2d at 448 (internal punctuation omitted); see Kelly, 2007 WL 4233671, *2 (it is "not

1

properly grounded on a request that a court rethink a decision already made."). "In order to succeed, the party requesting reconsideration must show that at least one of the following criteria applies: (1) a change in the controlling law; (2) availability of new evidence not available when the Court made its decision; or (3) need to correct a clear error of law or fact or to prevent manifest injustice." Dobrich, 432 F.Supp.2d at 448 (quoting Max's Seafood, 176 F.3d at 677). "As a general rule, motions for reconsideration should be granted 'sparingly.' " Id. (quoting Karr v. Castle, 768 F.Supp. 1087, 1090 (D.Del.1991)); accord D.Del. L.R. 7.1.5.

      **B. The Court Fully Comprehended and Rejected The Faulty Defense Claims.**

Although the defense asserts that the Court somehow missed the boat and misunderstood the arguments in their motion to dismiss (DOB at ¶ 3), the defense is simply incorrect.

      **1. The Court's Memorandum Opinion.** First, as review of the Court's memorandum opinion makes clear, the Court fully understood, comprehensively addressed and rejected each and every legal argument proffered by the defense. The Court's analysis of the discovery rule and equitable tolling principles and requirements under Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994), was entirely correct. There was no misunderstanding.[1]

      **2. The Defense Once Again Misstates the Key Issue.** Instead, the defense has merely rehashed the cornerstone claim of their unsuccessful motions to dismiss and once again misstated the key issue. Although an important one, the key issue is not plaintiff's lack of

---

[1] In keeping with the requirements of D.Del. L.R. 7.1.5 which emphasize brevity, plaintiff will not rehash the legal analysis contained within his Answering Brief in opposition to the unsuccessful defense motion. (D.I. 20).

knowledge that a promotion decision was made for a discriminatory reason.[2]  Instead, the key issue is plaintiff's lack of knowledge that there was a promotion decision made at all - which resulted from the "conscious decision [that] was made to keep the very existence of the promotion and the true reason for it" secret. (See, e.g. D.I. 17 at ¶¶ 16, 15). It was not until April or May of 2005 that plaintiff learned for the first time of "the existence of this promotion." (Id. at ¶ 26).  Simply put, one cannot challenge the denial of a promotion that one does not know exists.

> **3. The Defense Has Waived Their Ledbetter Claim.**  The doctrine of waiver is alive and well in the motion for reconsideration arena.  It is well established that reconsideration should not be granted when it merely repeats arguments that "were *or should have been presented to the court previously*." Karr, 768 F.Supp. at 1093 (emphasis added); see U.S. v. Marrero, 57 Fed.Appx. 905, 906 (3d Cir. 2003) ("We cannot fault the District Court for denying reconsideration when it was based on an issue not raised in [the party's] initial motion.").

Here, the defense claims that Ledbetter v. Goodyear Rubber & Tires Co., Inc., – U.S.–, 127 S.Ct. 2162 (2007), requires dismissal of plaintiff's case.  (OB at ¶¶ 6-16).  But one of the many problems with this defense claim is that Ledbetter was decided on May 29, 2007.  The defense motion to dismiss was not filed until June 21, 2007.  (D.I. 18).  The defense had abundant time and opportunity to frame this latest Ledbetter legal argument and include it in their Opening Brief, yet chose not to do so.[3]  Although the governor is a high government official, she

---

[2] As noted, this is an important issue and one which independently tolls the statute of limitations for all of the reasons already stated and discussed in the Court's opinion and plaintiff's earlier Answering Brief.

[3] Perhaps the defense will change course and claim that various cases issued post-Ledbetter require dismissal.  If this occurs, it still fails to explain why the defense failed to

is subject to the same rules that are applicable to everyone else. See Clinton v. Jones, 520 U.S. 681 (1997). So although this case may be an apparent inconvenience to her, she simply is not entitled to receive an endless number of bites at the apple as she keeps trying to 'get it right.'

Moreover, it is clear the defense was clearly aware of the Ledbetter decision given that it was cited throughout the defense motion to dismiss opening brief (albeit for a different legal proposition) . (See D.I. 19 at 11, 8). Thus, the defense cannot claim that Ledbetter offers valid grounds for reconsideration given that the defense was clearly aware of the decision and yet chose not make the specific Ledbetter argument now belatedly offered.[4]

**C. The Request to Certify an Interlocutory Appeal.** The conclusory defense request that the Court certify an interlocutory appeal also should be denied.

**1. The Basics.** A district court may certify an interlocutory appeal when it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." 28 U.S.C. § 1292(b).[5]

> It has, of course, long been the policy of the courts to discourage piece-meal appeals because most often such appeals result in additional burdens on both the court and the litigants. Permission to allow interlocutory appeals [under § 1292(b)] should thus be granted sparingly and with discrimination.

---

submit a supplemental authority letter to the Court containing this newly discovered case law. Given the limited judicial resources of our District, such an approach would have made abundant sense rather than wait until after the Court had expended the time and resources to write the opinion. By failing to raise these new arguments in a timely fashion, the defense waived them.

[4] To the extent the defense asserts that this latest Ledbetter argument was not waived and was instead made in their opening brief, than reconsideration must fail because this is then yet another rehashing of failed defense claims that have already been rejected.

[5] Importantly, "[d]istrict court judges have broad discretion to deny certification even where the statutory criteria are met." Morris v. Flaig, 511 F.Supp.2d 282, 314 (E.D.N.Y. 2007)

4

White v. Nix, 43 F.3d 374, 376 (8th Cir. 1994).  "In accordance with this policy, § 1292(b) 'should and will be used only in exceptional cases where a decision on appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases.'"  Id. (quoting S.Rep. No. 2434, 85th Cong., 2d Sess. (1958), reprinted in 1958 U.S.C.C.A.N. 5255, 5260); see In re Cement Antitrust Litig. (MDL No. 296), 267 F.2d 1020, 1026 (9th Cir. 1982) (it should be used "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation.").  Yet even in the protracted and expensive world of class action litigation, the Third Circuit, en banc, has held hard and fast to the rule of discouraging appeals under 28 U.S.C. § 1292(b).

> We recognize that class action determination has significant practical effects on the litigation and an aggrieved party may have a very real interest in securing early appellate review. But the same considerations apply to many other types of interlocutory orders and we cannot sanction an erosion of the prohibition against "piecemeal" appellate review. Our constantly increasing caseload reinforces the other more philosophical reasons for that policy.

Link v. Mercedes-Benz of North Amer., Inc., 550 F.2d 860, 862-63 (3d Cir. 1976) (en banc) (internal footnote omitted).

    **2.  There is No Controlling Question of Law.**  It is well established that 28 U.S.C. § 1292(b) "is not designed for review of factual matters."  Link, 550 F.2d at 863.  Here, the Court explained in its opinion that -

> To benefit from the application of either the discovery rule or the doctrine of equitable tolling ... Corporal Shockley must demonstrate that reasonable diligence could not have uncovered his cause of action until at least August of 2004. ... Whether Corporal Shockley can meet this burden *is a factual question* that the Court cannot resolve as a matter of law in the context of Defendants' motion to dismiss.

(Op. at 8-9) (citing cases holding that the diligence standard for each tolling mechanism is a factual question) (emphasis added).

As the Court correctly recognized, the determination of whether the statute of limitations has been tolled is a legal question which turns on the jury's resolution of underlying factual disputes, disputes which cannot be resolved in our present posture. As a result, the defense request for certification should be denied because the legal question of whether a statute of limitations was tolled turns on the resolution of underlying factual disputes.

Of course, this is not unusual. For example, the Third Circuit and the Supreme Court have repeatedly held that interlocutory qualified immunity appeals should be denied when the resolution of the qualified immunity question turns on the resolution of underlying fact disputes by the jury. See, e.g. Rivas v. City of Passaic, 365 F.3d 181, 192 (3d Cir. 2004); Wright v. City of Phila., 409 F.3d 595, 599 (3d Cir. 2005); Johnson v. Jones, 515 U.S. 304, 313-15 (1995).

**3. There is No Substantial Ground for Difference of Opinion.** Simply put, the case law cited by the Court in its opinion demonstrates that there is no substantial ground for difference of opinion on whether the statute of limitations should be tolled. The well recognized requirements of Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994), are clear. The defense merely seeks to cloud the question by misstating the core legal issue. When the issue is properly framed and addressed, as the Court concluded in its opinion, this is not a close question and the defense request should be denied here as well.

**4. The Conclusory Defense Request.** The defense request for certification also should be denied because rather than present cogent legal arguments, in a conclusory fashion the defense merely recites formulaic phrases and invokes talismanic expressions from the case law rather than explain their applicability to our present case. This is not a complex or complicated case which will require an inordinate amount of time or expense to litigate. It certainly is dramatically less complex than the class action litigation which the Third Circuit, en banc,

rejected for interlocutory review in Link, 550 F.2d at 862-63, or the antitrust litigation discussed in White, 43 F.3d at 376. Other than the fact that the individual defendant in this case is sitting Governor, there is nothing "exceptional," id., or out of the ordinary about this case.[6] It is a standard, run of the mill discrimination action. Accordingly, certification should be denied.

**D. Conclusion.** For the reasons set forth above, the defense motion should be denied in all respects.

        Respectfully Submitted,

        **THE NEUBERGER FIRM, P.A.**

        /s/ Stephen J. Neuberger
        **THOMAS S. NEUBERGER, ESQUIRE (#243)**
        **STEPHEN J. NEUBERGER, ESQUIRE (#4440)**
        Two East Seventh Street, Suite 302
        Wilmington, DE  19801
        (302) 655-0582
        TSN@NeubergerLaw.com
        SJN@NeubergerLaw.com

Dated: August 11, 2008        Attorneys for Plaintiff

---

[6] As noted above, the Supreme Court has previously held that the mere fact that a defendant in a lawsuit happens to be the President of the United States does not entitle that defendant to special treatment in avoiding litigation. See Clinton v. Jones, 520 U.S. 681 (1997). If the President of the United States must still answer for his actions in a court of law, certainly the governor of Delaware must as well.

**CERTIFICATE OF SERVICE**

     I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on August 11, 2008, I electronically filed this **Pleading** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

>Barry M. Willoughby, Esquire
>William W. Bowser, Esquire
>Young Conaway Stargatt & Taylor, LLP
>The Brandywine Building, 17th Floor
>1000 West Street, P.O. Box 391
>Wilmington, DE 19899-0391
>BWilloughby@ycst.com
>WBowser@ycst.com
>
>Ralph K. Durstein III, Esquire
>Department of Justice
>Carvel State Office Building
>820 N. French Street
>Wilmington, DE 19801
>Ralph.Durstein@state.de.us

>/s/ Stephen J. Neuberger
>**STEPHEN J. NEUBERGER, ESQ.**

# UNREPORTED CASES



Slip Copy  
Slip Copy, 2007 WL 4233671 (D.Del.)  
2007 WL 4233671 (D.Del.)

Page 1

**H** Kelly v. MBNA America Bank  
D.Del.,2007.  
Only the Westlaw citation is currently available.  
United States District Court,D. Delaware.  
Herman KELLY, Plaintiff,  
v.  
MBNA AMERICA BANK, Defendant.  
**Civ. Action No. 06-228-JJF.**

Nov. 29, 2007.

Herman Kelly, Detroit, MI, Pro se Plaintiff.  
Karen V. Sullivan, Esquire, Oberly, Jennings & Rhodunda, PA, Wilmington, DE, for Defendant MBNA American Bank now known as FIA Card Services, National Association.

*MEMORANDUM OPINION*

FARNAN, District Judge.

**\*1** Plaintiff Herman Kelly ("Kelly"), who proceeds *pro se* and was granted leave to proceed *in forma pauperis,* filed this action alleging state and federal violations. On June 25, 2007, the Court granted in part, and denied in part, Defendant MBNA American Bank, now known as FIA Card Services, National Association's ("MBNA") Motion To Dismiss Amended Complaint. (D.I.46, 83.) Now before the Court is MBNA's Motion For Reconsideration Of Motion To Dismiss Amended Complaint. Also before the Court are Plaintiff's Motions To Compel, To Vacate Court's Order/Judgment FRCP; 60b; 59e, and To Strike. (D.I.85, 86, 90.) For the reasons set forth below, the Court will grant the Motion For Reconsideration and will deny the remaining Motions. (D.I.84, 85, 86, 90.)

**I. PROCEDURAL AND FACTUAL BACKGROUND**

This case involves six credit card accounts. Plaintiff's Complaint and Amended Complaint refer to Account Numbers 1423, 6921, 0023, 4211, 6519, and 0919. Plaintiff alleges that he paid MBNA his "loan balance amounts and legal interest in full" and requests a refund from MBNA for "over charges billing payments." (D.I.2, ¶ 11.) He alleges that MBNA engaged in unfair banking, unfair billing, discrimination, and breach of contract. *Id.* at ¶ 13.

The parties are aware of the procedural and factual background of this case which is set forth in detail in the Court's Memorandum Opinion dated June 25, 2007. (D.I.82.) The Court granted in part and denied in part MBNA's Motion To Dismiss for lack of jurisdiction over the subject matter. The Court dismissed the claims relative to Account Numbers 1423, 6921, and 3734 based upon the *Rooker-Feldman* doctrine.[FN1] MBNA had also moved to dismiss claims on Account Numbers 7332 and 5567 based upon the Federal Arbitration Act ("FAA"), but dismissal was denied on the basis that there had been no allegations regarding these Account Numbers. The Court denied MBNA's Motion To Dismiss Account Number 5567 under a *res judicata* theory, again, on the basis that the Account Number was not mentioned by Plaintiff. Finally, the Court denied, without prejudice, MBNA's Motion To Dismiss in favor of binding arbitration because it was unable to discern what accounts, if any, were subject to arbitration. The Court noted, however, that MBNA's position regarding arbitration for Account Number 6445 was well-taken, even though the account had not been mentioned by Plaintiff.

> FN1.*See Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983).

MBNA moves for reconsideration on the basis that there was confusion over the Account Numbers at issue as a result of the parties referring to different a number for the same account. It

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2007 WL 4233671 (D.Del.)  
2007 WL 4233671 (D.Del.)

Page 2

submits an affidavit showing that the six accounts are each known by three different numbers, the Original Account Number, the Converted Account Number, and the Charge-Off Account Number.[FN2] At the time the Court rendered its Memorandum Opinion it did not have before it all relevant information for the Account Numbers. The Account Numbers changed from their Original Account Numbers to Converted Account Numbers when the accounts were sold to MBNA and converted to MBNA's system. When the Converted Account Number's balance became a bad debt it was given a Charge-Off Account Number and transferred for debt collection.

> FN2. In reviewing a factual challenge to the Court's subject matter jurisdiction, the Court is not confined to the allegations of the Complaint, and the presumption of truthfulness does not attach to the allegations in the Complaint. *Mortensen v. First Fed. Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). Instead, the Court may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction. *Gotha v. United States,* 115 F.3d 176, 179 (3d Cir.1997). Once the Court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists. *Mortensen,* 549 F.2d at 891.

**\*2** Plaintiff referred to the Converted Account Numbers in his Complaint and Amended Complaint and, with the exception of Converted Account Numbers 1423 and 6921, MBNA referred to the Charge-Off Account Numbers in its Motion To Dismiss. The Account Numbers including Original, Converted, and Charge-Off are as follows:

Account Numbers

| *Original* | *Converted* | *Charge-Off* |
|---|---|---|
| 1611 | 1423 | 1453 |

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2007 WL 4233671 (D.Del.)  
2007 WL 4233671 (D.Del.)

Page 3

| | | |
|---|---|---|
| 3461 | 6519 | 3734 |
| 7784 | 4211 | 5567 |
| 4219 | 0919 | 6335 |
| 9377 | 6921 | 3235 |
| 0346 | 0023 | 7332 |

Plaintiff objects to MBNA's Motion For Reconsideration. (D.I.88, 90.) In doing so, he provided a "history of case and facts" which corroborates MBNA's position on four of the accounts [FN3]: 0346/0023/7332; 1611/1423/1453; 7784/4211/5567; and 4219/0919/6335. Plaintiff maintains that he has paid in full all the accounts in question. He objects to MBNA's Motion To Reconsider and argues that he timely filed a Motion To Vacate/For Reconsideration [FN4] pursuant to Fed. F. Civ. P. 60(b).[FN5] (D.I.88.) Plaintiff argues that: 1) any interest charged over eighteen percent is illegal, 2) the U.S. Comptroller of the Currency ("USCOC") is the proper agency having authority over a national bank such as MBNA, 3) the USCOC has the power to review issues and complaints against MBNA, and 4) the USCOC had full jurisdiction over the matter and issued an order regarding the same prior to any arbitration or State court proceedings.[FN6] Plaintiff states that the USCOC informed him that MBNA was to pay him money. He argues that the U.S. Trade Commission and the USCOC's letter was pending before the "NAF (i.e., National Arbitration Forum (hereafter ("NAF")) illegal awards."(D.I.90.)

>  FN3. So there is no further confusion the Court will refer to the Account Numbers using the Original/Converted/Charge-Off number for each account. For example, 1611/1423/1453.

>  FN4. The Motion To Vacate argues that the Court overlooked the fact that an administrative case was pending against MBNA before the U.S. Office of the Comptroller of the Currency when, in retaliation, MBNA filed six arbitration claims and three Detroit state court cases against Plaintiff. (D.I.86.)

>  FN5. MBNA asks the Court to disregard Plaintiff's Objection To The Motion For Reconsideration and Motion To Vacate pursuant to Rule 60(b) because they were not timely filed. (D.I.89.)

>  FN6. Plaintiff refers to a letter dated December 23, 2004, from the USCOC to support his position that it has "full jurisdiction" over this matter. The Court has reviewed the letter and, rather than discuss jurisdiction, it advises Plaintiff that it contacted MBNA regarding Plaintiff's complaint and that the bank had referred Plaintiff's accounts to outside counsel. It also advised Plaintiff of the steps necessary to protect his rights in the event of a billing error on his credit card account. (D.I.88, exhibit.) Contrary to Plaintiff's position, the letter is neither an order nor a judgment ruling in his favor.

Plaintiff contends that this Court has complete jurisdiction over his Complaint to enforce all rulings, orders, and directions of the U.S. Federal Trade Commission ("FTC") and the USCOC. Plaintiff further contends that he has raised claims of account audit disclosures, fraud, racketeering, double jeopardy, discrimination, and extortion. Finally, he claims that the NAF did not have jurisdiction over him, and that he objected to the NAF proceeding by filing bank grievances with the USCOC and FTC.[FN7]

>  FN7. Plaintiff explains that the FTC forwarded the grievances to the USCOC who has full power and authority over national banks.

**II. STANDARD OF REVIEW**

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                                  Page 4
Slip Copy, 2007 WL 4233671 (D.Del.)
2007 WL 4233671 (D.Del.)

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985). A motion for reconsideration may be granted if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999). A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made. *See Glendon Energy Co. v. Borough of Glendon,* 836 F.Supp. 1109, 1122 (E.D.Pa.1993). Motions for reargument or reconsideration may not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Brambles USA, Inc. v. Blocker,* 735 F.Supp. 1239, 1240 (D.Del.1990). Reargument, however, may be appropriate where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Brambles USA,* 735 F.Supp. at 1241 (D.Del.1990) (citations omitted); *See also* D. Del. LR 7.1.5.

### III. DISCUSSION

#### A. *Rooker-Feldman* Doctrine

**\*3** MBNA sought dismissal of claims relating to Account Number 3734. In ruling on the Motion To Dismiss, the Court observed that the Complaint and Amended Complaint made no reference to Account Number 3734 but, nonetheless, claims relative to Account Number 3734 fell under the purview of the *Rooker-Feldman* doctrine and were barred. MBNA asks the Court to clarify dismissal of Account Number 3734 claim with respect to Account Number 3461/6519/3734.

The Motion To Reconsider is well-taken as to Account Number 3734. At the time the Court rendered its Memorandum Opinion it did not have before it information that the Account Numbers had changed. The Memorandum Opinion noted that the Michigan State Court entered judgment in Account Number 3734. Account Number 3734 is the same as Plaintiff's Account Number 6519 (i.e., 3461/6519/3734). Accordingly, the Court will grant MBNA's Motion For Reconsideration and clarifies that based upon the *Rooker-Feldman* doctrine the claims relative to Account Number 3461/6519/3734 are dismissed.

#### B. Federal Arbitration Act

#### 1. Arbitration

MBNA moves for reconsideration and asks for dismissal of claims relative to Account Number 4219/0919/6335. In its Motion To Dismiss MBNA referred to the account as Account Number 0919, while Plaintiff referred to it as Account Number 6335. As discussed above, the foregoing are one and the same account, but this was unknown to the Court at the time it issued its Memorandum Opinion.

The NAF opened a case for Account Number 4219/0919/6335 on July 15, 2005, and Plaintiff was served with process on February 1, 2006. MBNA indicates that arbitration is stayed in this matter. Plaintiff and MBNA both submitted credit card agreement exhibits indicating that disputes between them shall be resolved by binding arbitration conducted by the NAF.

The "Arbitration and Litigation" clause states that it applies unless the cardholder was given an opportunity to reject the Arbitration and Litigation clause and rejection was made in the manner and timeframe required. Plaintiff did not allege that he rejected arbitration nor did he allege the accounts are subject to arbitration. Nonetheless, he now argues that NAF had *no* jurisdiction over him and that he objected to the NAF proceeding by filing bank grievances with the USCOC and the FTC.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2007 WL 4233671 (D.Del.)  
2007 WL 4233671 (D.Del.)

Page 5

Federal policy favors arbitration. *See Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.,* 247 F.3d 44, 55 (3d Cir.2001). The credit card agreement contains an "Arbitration and Litigation" clause and it is governed by the FAA. (D.I.47, Exs.3, 6.) Under the FAA, a court, on application of one of the parties to an agreement to arbitrate, must stay a judicial action commenced in that court which is the subject of an arbitration clause or, in the alternative, must dismiss any arbitrable claims. 9 U.S.C. §§ 3-4; *Shaffer v. Graybill,* 68 Fed. Appx. 374 (3d Cir.2003). Also under the FAA, the proper procedure for a party to challenge whether it is subject to an arbitration agreement is to move the court for a stay of arbitration. *Mays v. Lanier Worldwide, Inc.,* 115 F.Supp.2d 1330, 1342-43 (M.D.Ala.2000) (quoting *Halley Optical Corp. v. Jagar Int'l Mktg. Corp.,* 752 F.Supp. 638, 639 (S.D.N.Y.1990)); *see also* 9 U.S.C. § 4. The Third Circuit has interpreted § 3 of the FAA provision to permit dismissal when all issues raised in the action are arbitrable. *See Smith v. The Equitable,* 209 F.3d 268, 272 (3d Cir.2000) ("when 'all the claims involved in an action are arbitrable, a court may dismiss the action instead of staying it' ") (citations omitted).

**\*4** In order to determine if there is an enforceable arbitration agreement between the parties that compels arbitration and a stay or dismissal of the present action, a court must consider the following issues: (1) does a valid agreement to arbitrate exist between the parties, and (2) do the plaintiff's claims fall within the substantive scope of the valid arbitration agreement. *See PaineWebber v. Hartmann,* 921 F.2d 507, 510-511 (3d Cir.1990). Doubts are generally resolved in favor of coverage of the arbitration agreement. *See AT & T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643 (1986).

There appears to be a valid agreement to arbitrate and Plaintiff's claims appear to fall within the scope of arbitration clause as set forth in the MBNA credit card agreement. Plaintiff now contends that he did not agree to arbitration and objected by filing bank grievances with the USCOC and the FTC. He does not, however, assert that he rejected the arbitration clause in the manner and timeframe as is required in the credit card agreement. Nor is there evidence he moved the court to stay arbitration as is required by the FAA. Accordingly, the Court will grant the Motion For Reconsideration and will dismiss the claims relative to Account Number 4219/0919/6335 as they are subject to arbitration.

**2. Notice**

MBNA sought dismissal of claims relative to Account Numbers 5567 and 7332 on the basis that Plaintiff attempted to use this Court to judicially review the arbitration awards, but failed to timely move to vacate the arbitration awards as required by 9 U.S.C. § 12 of the FAA. MBNA seeks reconsideration of the Court's denial as moot MBNA's Motion To Dismiss on the basis that Plaintiff mentions neither account in his Complaint or Amended Complaint. As discussed above, Account Numbers 7332 and 5567 as used by MBNA are actually Plaintiff's Account Numbers 0023 and 4211 (i.e., Account Numbers 0346/0023/7332 and 7784/4211/5567).

Arbitration awards were entered in Account Numbers 0346/0023/7332 and 7784/4211/5567, both accounts requiring mandatory arbitration. Section 12 of the FAA provides that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. "A party to an arbitration award who fails to comply with the statutory precondition of timely service of notice forfeits the right to judicial review of the award ." *Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith,* 477 F .3d 1155, 1158 (10th Cir.2007) (quoting *International Bhd. of Elec. Workers, Local Union No. 969 v. Babcock & Wilcox,* 826 F.2d 962, 966 (10th Cir.1987); *see also Lander Co., Inc. v. MMP Investments, Inc.,* 107 F.3d 476, 478 (7th Cir.1997); *Cullen v. Paine, Webber, Jackson & Curtis, Inc.,* 863 F.2d 851, 854 (11th Cir.1989).

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2007 WL 4233671 (D.Del.)  
2007 WL 4233671 (D.Del.)

Page 6

MBNA filed claims in the NAF for both accounts at issue. A claim was filed for Account Number 0346/0023/7332 on April 15, 2005, and an arbitration award was entered against Plaintiff on September 1, 2005. A claim was filed for Account Number 7784/4211/5567 on September 9, 2005, and an arbitration award were entered against Plaintiff on March 17, 2006.

**\*5** The arbitration award for Account Number 0346/0023/7332 was entered against Plaintiff on September 9, 2005, and this action was not commenced until April 6, 2006, long after the three month time period had expired. The arbitration award for 7784/4211/5567, however, was entered on March 17, 2006, approximately three weeks prior to the filing of this lawsuit. Regardless, neither the Complaint nor the Amended Complaint make no mention of the arbitration award for Account Number 7784/4211/5567, but instead speak to the business practices of MBNA. Moreover, the Court has reviewed all of Plaintiff's objections and responses, and nothing indicates that, as to Account Number 7784/4211/5567, it was Plaintiff's intent in filing his Complaint and Amended Complaint to vacate, modify, or correct the arbitration award as is required by Section 12 of the PAA.[FN8] Nor has Plaintiff advanced such an argument. Accordingly, the Court finds that Plaintiff has forfeited his right to judicial review of these two arbitration awards. Based upon the foregoing, the Court will grant MBNA's Motion For Reconsideration and will dismiss the claims relative to Account Numbers 0346/0023/7332 and 7784/4211/5567 for failure to comply with Section 12 of the FAA.

> FN8. The Amended Complaint seeks five million dollars in damages for Defendant's "illegal misconduct." (D.I.5, ¶ 3.)

**IV. SUA SPONTE DISMISSAL**

Plaintiff proceeds *pro se* and has been granted leave to proceed *in forma pauperis.* The *in forma pauperis* statute gives the Court authority to dismiss a case *at any time* if the Court determines that the action is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

Plaintiff alleges discrimination, illegal high compound interest prime rate, harassment, breach of contract agreement, double jeopardy, interference, fraud, sanctions/injunction, false prosecution, false advertising, deceit accounting practice, conspiracy, embezzlement, misrepresentation, negligence, settlement compromise, witness tampering, and extortion. (D.I. 2 at ¶ 2.) He also alleges denial of his constitutional rights to access to the courts, due process, equal protection, a jury trial, enjoyment of life, appointed counsel, and discovery. *Id.* at 14.

Plaintiff specifically raises a claim against MBNA for "breach of contract agreement, accounting, discrimination, slander libel" and for general damages. *Id.* at ¶ 24(b). More particularly, Plaintiff alleges that approximately ten years ago he invested money in MBNA and opened different credit card accounts with it and other third party banks. *Id.* at ¶ 14. He alleges that MBNA, without written permission, consent, or notice, took his available cash credit in violation of U.S. laws and the constitution. *Id.* at ¶ 16. Plaintiff further alleges that MBNA erred in the computation of any money balance due, illegally overcharged the daily interest rate, refused to provide a fair accounting audit, changed the interest rate, and charged a different higher illegal interest rate. *Id.* at ¶¶ 17, 19, 26, 27.[FN9]

> FN9. Plaintiff filed similar lawsuits in *Kelly v. Citibank,* C.A. No. 06-1440-CAB (N.D.Ohio) and *Kelly v. Chase Bank, Inc.,* C.A. No. 07-1650 (S.D.Tex.). Both cases were dismissed. The *Citibank* case was dismissed on August 16, 2006, pursuant to 28 U.S.C. § 1915(e) for failure to state a claim upon which relief can be granted and for lack of an arguable basis in law or fact; the *Chase Bank* case was dismissed on May 23, 2007, for want of jurisdiction and failure to state a claim

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2007 WL 4233671 (D.Del.)  
2007 WL 4233671 (D.Del.)

Page 7

**\*6** A complaint must contain " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). A complaint does not need detailed factual allegations, however "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations in the complaint are true (even if doubtful in fact)." *Id.*(citations omitted).

The Court liberally construes the allegations raised by Plaintiff. The disjointed allegations consist primarily of labels and conclusions that MBNA engaged in unlawful credit card financial practices. Plaintiff refers, in particular, to the six credit card accounts discussed in this Memorandum Opinion. The Court finds that the claims as to the six credit card accounts fall under the umbrella of the FAA. As previously discussed above, the Court will dismiss those claims.

Plaintiff also makes a number of wholesale allegations. Most are frivolous and some allege violations of his constitutional rights. When bringing a civil rights claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v.. Atkins,* 487 U.S. 42, 48 (1988). There are no allegations to suggest that MBNA engaged in conduct which could be characterized as either state or federal action. Based upon the foregoing, the Court will dismiss, with the exception of the FAA credit card claims, all remaining claims pursuant to 28 U.S.C. § 1915(e)(2)(B).

**V. MISCELLANEOUS MOTIONS**

The Court will grant MBNA's Motion For Reconsideration, and will dismiss *sua sponte* all other claims, thus, disposing of all issues in the case. Plaintiff has filed a Motion To Vacate Court's Order/Judgment FRCP; 60b; 59e. (D.I.86.) In seeking reconsideration Plaintiff presents no new information or law, makes the same argument, and submits the same documents. His motion does not meet the requisites for the Court to vacate, set aside, or reconsider its June 25, 2007 Memorandum Opinion and Order. Therefore, the Court will deny the remaining pending Motions, as follows: Plaintiff's Motion To Compel (D.I.85), Motion To Vacate Court's Order/Judgment FRCP; 60b; 59e, (D.I.86) and Motion To Strike (D.I.90).

**VI. CONCLUSION**

For the reasons discussed above, the Court will grant MBNA's Motion For Reconsideration, will deny all other pending motions, and will dismiss *sua sponte* the remaining claims as frivolous and for failure to state a claim upon which relief may be granted. (D.I.84, 85, 86, 90.) An appropriate Order will be entered.

***ORDER***

**\*7** NOW THEREFORE, at Wilmington this 29th day of November, 2007, IT IS HEREBY ORDERED that:

1. Defendant FIA Card Services, National Association F/K/A MBNA America Bank, N.A.'s Motion For Reconsideration Of Motion To Dismiss Amended Complaint (D.I.84) is ***GRANTED.***

2. Plaintiff's Motion To Compel (D.I.85) is ***DENIED.***

3. Plaintiff's Motion To Vacate Court's Order/Judgment Dated June 25, 2007; FRCP; 60b, 59e (D.I.86) is ***DENIED.***

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4233671 (D.Del.)
2007 WL 4233671 (D.Del.)

Page 8

4. Plaintiff's Motion To Strike Defendant's Reply Dated August 27, 2007 (D.I.90) is **DENIED.**

5. The remaining claims are **DISMISSED** pursuant to [28 U.S.C. § 1915(e)(2)(B)](#).

D.Del.,2007.
Kelly v. MBNA America Bank
Slip Copy, 2007 WL 4233671 (D.Del.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.