```
                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF DELAWARE

CORPORAL TIMOTHY SHOCKLEY,        :
                                  :
            Plaintiff,            :
                                  :
    v.                            :   C.A. No. 06-478-JJF
                                  :
GOVERNOR RUTH ANN MINNER,         :
individually;  COLONEL            :
THOMAS F. MACLEISH, in his        :
official capacity as the          :
Superintendent, DELAWARE          :
STATE POLICE; and                 :
DIVISION OF STATE POLICE,         :
DEPARTMENT OF SAFETY AND          :
HOMELAND SECURITY, STATE OF       :
DELAWARE                          :
                                  :
                                  :
            Defendants.           :
```

Thomas S. Neuberger, Esquire and Stephen J. Neuberger, Esquire of
THE NEUBERGER FIRM, P.A., Wilmington, Delaware.

Attorneys for Plaintiff.

Barry M. Willoughby, Esquire, and Margaret M. DiBianca, Esquire
of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington Delaware.

Attorney for Defendant Governor Ruth Ann Minner.

**MEMORANDUM OPINION**

June 25, 2010
Wilmington, Delaware.

Farnan, District Judge.

Presently before the Court is Defendant Governor Ruth Ann Minner's Motion For Summary Judgment (D.I. 63). For the reasons to be discussed, this Motion will be denied.

## PROCEDURAL BACKGROUND

Plaintiff Corporal Timothy Shockley ("Plaintiff") filed the instant action against Defendants Governor Ruth Ann Minner, Colonel Thomas F. MacLeish, and the Division of State Police, Department of Safety and Homeland Security of the State of Delaware pursuant to 42 U.S.C. § 1983 alleging that he was denied a promotion on the basis of intentional gender discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. (D.I. 1.) More specifically, Plaintiff alleges that he was denied a promotion to the rank of Sergeant on the orders of Defendant Governor Ruth Ann Minner because he was male, and she wanted a female to lead her security detail, known as the Executive Protection Unit ("EPU"). (Id.)

On March 11, 2010, a joint stipulation was entered which voluntarily dismissed all claims against Defendants Colonel Thomas F. MacLeish, and the Division of State Police. (D.I. 62.) Accordingly, the only remaining defendant in the instant action is Defendant Governor Ruth Ann Minner ("Defendant"), in her individual capacity.

**FACTUAL BACKGROUND**

## I.    The Parties

Plaintiff is a male who holds the rank of Corporal in the Delaware State Police ("DSP").  He has been with the DSP since 1992, and served on the EPU from December 2000 to May 2005. (D.I. 1 ¶ 7.)  Defendant is the former Governor of the State of Delaware.  She served as Governor from 2001 to 2009.

## II.   The Promotion Process At The Delaware State Police

The parties agree that the promotions process within the DSP for corporals seeking to become sergeants is done according to a banded eligibility list.  (D.I. 64, at 8; D.I. 67, at 6.)  In order to qualify for placement on a promotional band, a corporal must participate in a multi-part process.  (D.I. 65, at A20-A23; Shockley Dep. 29-31 at A130-A132.)  First, candidates must take a written examination.  (A20-A23; Shockley Dep. 29-30 at A130-A131.)  Those who attain a certain cut-off score are then eligible for an oral interview.  (A20; Shockley Dep. 30 at A131.)  Next, upon completion of oral interviews, candidates are assigned final combined scores and are divided into groups called "bands," based on those final scores.  (A22, A25; Shockley Dep. 30 at A131.)  There are bands "A" through "E," with the highest-scorers grouped in band "A," the second-highest scorers in band "B," and so on.  (Chaffinch Dep. 11 at A31.)  Finally, when a sergeant position becomes available, the Superintendent of the DSP must

2

promote candidates from the highest available band before promoting anyone from the next highest band. (Chaffinch Dep. 11 at A31.) Once all candidates on a given band are promoted, the next highest band is published, and those candidates become eligible for promotion. (Chaffinch Memo. at B1362-B1363.) Placement on a band, however, does not guarantee promotion, as the promotional bands are typically used for two year periods. (Chaffinch Memo. at B1362-1363; Shockley Dep. 36-36 at A137-A138.) At the end of a promotional period, the process starts over, and new promotional bands are produced. (Chaffinch Memo. at B1362-B1363.)

With the exception of promotions within the EPU,[1] the parties agree that the Superintendent of the DSP makes all promotions decisions. (D.I. 64, at 10; D.I. 67, at 7.) The Superintendent passes the promotions list to the Secretary of Public Safety and Homeland Security, who then passes the list on to the Governor as a matter of courtesy. (Ford Dep. 5-6 at A60-A61.) The Governor does not have the authority to approve or veto the Superintendent's promotions. (Ford Dep. 183-184 at B1342; Blunt-Bradley Dep. 103 at B1172; Minner Dep. 47 at A68.) Rather, the Governor approves the expenditure of State funds for

---

[1]For a discussion of the promotion process within the EPU, and the parties' dispute over the extent of the Governor's authority to determine who is promoted within the EPU, see infra pp. 4-5.

3

promotions within the DSP, as well as for promotions in other state agencies. (Minner Dep. 94-95 at A71-A72.)

The parties dispute, however, the extent of the Superintendent's discretion to leave a sergeant position vacant. (D.I. 64, at 9; D.I. 67, at 8.) Plaintiff contends that whenever any vacancies or "operational needs" arise in the DSP, a promotion is required to be made. (D.I. 67, at 8.) Defendant contends that the Superintendent may elect to not fill a vacant sergeant position because even those in the highest band can only be promoted if they are qualified and well-suited, in terms of experience and background, for the available position. (Shockley Dep. 31 at A132; Chaffinch Memo. at B1362-B1363.)

### III. The EPU And Promotions Within The EPU

The EPU is a unit staffed by four DSP troopers with the primary mission of providing security for the Governor of the State of Delaware. (Executive Protection Standard Operating Procedure at A4-A5.) Among other things, the EPU protects the Governor and the Governor's immediate family and designees, investigates threats, and coordinates with other local, state, and federal law enforcement agencies. (Id.) The ranking trooper within the EPU is designated as the officer-in-charge, and reports directly to the Superintendent. (Id.) Although the general practice is to have a sergeant serve as Non-Commissioned-Officer-In-Charge ("NCOIC"), officers of other ranks, such as

4

lieutenant or captain, could be in charge of the EPU.  (Chaffinch
Dep. 30 at A43.)   The Governor can choose the four troopers whom
he or she wants to serve in the EPU.  (Chaffinch Dep. 27, 30 at
A40, A43.)   Defendant contends that the Governor has complete
discretion to select the NCOIC.  (Chaffinch Dep. 35 at A47;
Minner Dep. 145 at A79.)   Plaintiff, however, contends that the
Superintendent retains final authority over promotions to
sergeant, including when the vacant sergeant position is that of
the NCOIC of the EPU.  (Marcin Dep. 58 at A330; Ford Dep. 183-84
at A198.)

## IV.  Plaintiff's Allegations Of Gender Discrimination Against Defendant In Her Selection Of NCOIC

Many of the underlying facts to this action are not in
dispute.   In November 2000, after Defendant's election as
Governor, Sergeant Steven Montague ("Sergeant Montague") was
named as NCOIC of the EPU.  (Minner Dep. 225 at A100.)   The three
other troopers appointed to the EPU were Corporal Siobhan
Sullivan ("Corporal Sullivan"), Corporal Mark Rainford, and
Plaintiff.   (Minner Dep. 225-226 at A100-A101.)   At the time of
their appointment to the EPU in 2000, Corporal Sullivan had
approximately thirteen and a half years of service with the DSP,
and Plaintiff had approximately seven years of service.
(Chaffinch Dep. 21 at A36.)   Additionally, Corporal Sullivan had
served on Governor Carper's EPU for five years.   (Montague Aff.
at A169.)   Because she had the most seniority of any of the three

5

junior troopers in the EPU, Corporal Sullivan served as Sergeant Montague's second-in-command. (Shockley Dep. 45-46 at A141-A142.)

Sergeant Montague retired from the DSP in 2003, going on terminal leave April 30, 2003. (Minner Dep. 13 at A65.) Effective May 1, 2003, Corporal Sullivan became acting NCOIC of the EPU. (Minner Dep. 151 at A83.) Both parties agree that it was proper for Corporal Sullivan to assume this temporary position as the most senior of the other three EPU troopers. (D.I. 64, at 5-6; D.I. 67, at 3 n.5.) At this time, the promotional bands promulgated on November 21, 2001 (the "2001 Eligibility List") were in effect. (Memo. No. 37-01 at B31-32; Memo. No. 10-03 at B34.) Plaintiff was on Band "D." (Memo. No. 10-03 at B34.) Corporal Sullivan was not on any promotional band. (Chaffinch Dep. 16-17 at B5-6.)

The parties versions of events diverge with regard to the selection and promotion of a permanent NCOIC. Plaintiff contends that on August 21, 2003, Colonel L. Aaron Chaffinch ("Colonel Chaffinch"), Superintendent of the DSP, and James Ford, Secretary of Public Safety and Homeland Security ("Secretary Ford"), met with Defendant to apprise her of the promotions being made from promotion Band D. (Chaffinch Dep. 36 at B10.) Plaintiff contends that Colonel Chaffinch advised Defendant that Plaintiff was being promoted to sergeant and would be NCOIC of the EPU.

6

(Id.) According to Plaintiff, Defendant vetoed Plaintiff's promotion, commenting that Corporal Sullivan was going to be the first female NCOIC of the EPU. (Shockley Dep. 67, 69 at B499, B501.) In addition, Plaintiff contends that the true reason he was not promoted (i.e., Plaintiff's gender) was not disclosed to him, and that neither Defendant, Colonel Chaffinch, nor Secretary Ford told anyone about the conversation with Defendant, or her decision regarding the NCOIC position. (Chaffinch Dep. 38-39 at B11.) Plaintiff argues that he only learned of Colonel Chaffinch's intent to promote him, and the fact that the Colonel had tried to promote him, in April or May 2005. (Shockley Decl. at B2762.) During a conversation at Colonel Chaffinch's home, Plaintiff alleges that Colonel Chaffinch told him that Defendant had vetoed his promotion. (Shockley Decl. ¶ 9 at B2762.)

Defendant disputes Plaintiff's versions of both the August 21, 2003 conversation and the April/May 2005 conversation. With regard to the August 21, 2003 conversation, Defendant asserts that she told Colonel Chaffinch that she had no problem with Plaintiff's promotion, but that she reserved the option of naming the NCOIC of the EPU. (Minner Dep. 164 at A93.) Additionally, Defendant denies making any statement about wanting to have a female NCOIC. (Minner Dep. 230-231 at A105-A106.) With regard to the April/May 2005 conversation, Defendant notes that Colonel Chaffinch flatly denies ever having told Plaintiff that she

7

vetoed his promotion, or that Defendant made a statement concerning a female NCOIC. (Chaffinch Dep. 62-65 at A55-A57.) Further, Defendant contends that Plaintiff was ultimately not promoted because Colonel Chaffinch determined that he was not qualified for any available position. (Minner Dep. 157 at A88.)

Plaintiff transferred out of the EPU on May 16, 2005. (Shockley Request For Transfer at A17.) New promotional bands went into effect on May 28, 2004, and Corporal Sullivan was placed on Band B. (Chaffinch Dep. 26 at A39.) Plaintiff was not banded. (Shockley Dep. 34-35 at B466-B467.) Subsequently, on October 1, 2005, Corporal Sullivan was promoted to sergeant and named as permanent NCOIC. (Minner Dep. 152 at B178.)

## LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," then the court should grant summary judgment. Fed. R. Civ. P. 56(c). When considering whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-movant, and resolve all reasonable inferences in the non-movant's favor. Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). However, a court should not make credibility determinations or weigh the

8

evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person would conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995)(internal citations omitted).

The movant bears the burden of proving the absence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). Once the movant offers such proof, the non-movant "must come forward with 'specific facts showing [a] genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). The mere existence of some evidence in support of the non-movant will not be sufficient to survive a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Thus, in ruling on a summary judgment motion, the court must perform the "threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

## DISCUSSION

By her Motion, Defendant contends that she is entitled to

9

summary judgment for three reasons: (1) the statute of

limitations bars Plaintiff's claim, and Plaintiff is precluded

from invoking the doctrine of equitable tolling; (2) Plaintiff

cannot establish a prima facie case of gender discrimination or

point to any evidence of pretext; and (3) Plaintiff's suit is

barred by the doctrine of qualified immunity.[2]  The Court will

examine each contention in turn.  (D.I. 64.)

## I.   Whether Defendant Is Entitled To Summary Judgment Because Plaintiff's Claim Is Barred By The Statute Of Limitations

In determining the applicable statute of limitations period

for a cause of action brought pursuant to 28 U.S.C. § 1983,

federal law looks to the law of the state in which the cause of

---

[2] In her Reply Brief, Defendant also takes issue with
Plaintiff's reliance on deposition transcripts from a previous
case, Bullen v. Chaffinch, C.A. No. 02-1315-JJF (D. Del.).  (D.I.
82, at 4.)  Defendant contends that these depositions may not be
used against her under Rule 32 of the Federal Rules of Civil
Procedure.  (Id. at 4-5.)  In a letter submitted to the Court,
Plaintiff responds that Defendant was clearly on notice of his
intent to use the deposition and trial record from Bullen in this
action.  (D.I. 83.)

In relevant part, Rule 32 of the Federal Rules of Civil
Procedure provides that deposition testimony may be used against
a party at trial if: (1) the party was present or represented at
the taking of the deposition and had reasonable notice of it; (2)
it would be admissible under the Federal Rules of Civil Procedure
if the deponent were present and testifying; (3) it is otherwise
admissible under Rule 32.  Fed. R. Civ. P. 32(a).  Plaintiff
apparently does not dispute the Defendant was not present at, nor
given notice of, the depositions taken in the Bullen action.
Further, Defendant was not a party to the Bullen action, and is
not a successor in interest to a party in the Bullen action. See
Fed. F. Civ. P. 32(a)(8).  Accordingly, in reviewing the summary
judgment contentions in this Motion, the Court will not consider
the deposition transcripts from the Bullen action.

action arose, and uses the period which the state provides for personal injury torts. Wallace v. Kato, 549 U.S. 384, 387 (2007) (citing Owens v. Okure, 488 U.S. 235, 249-50 (1989)). Delaware provides a two-year statute of limitations period for personal injury claims. See 10 Del. C. § 8119[3]; Gillis v. Taylor, 626 F. Supp. 2d 462, 466 (D. Del. 2009). Both parties agree that a two-year limitation period is applicable.

It is axiomatic that the statute of limitations begins to run when the plaintiff's cause of action accrues. E.g., Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994). The accrual date of a § 1983 cause of action is a question of federal law, and "[a]spects of § 1983 which are not governed by reference to state law are governed by federal rules conforming in general to common-law tort principles." Wallace, 549 U.S. at 388. "Under those principles, it is 'the standard rule that [accrual occurs] when the plaintiff has 'a complete and present cause of action.'" Id. (citing Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. Of Cal., 522 U.S. 192, 201 (1997)). Further, "[a] section 1983 claim accrues when a plaintiff knows or has reason to know of the injury that forms the basis of his or her cause of action." Johnson v. Cullen, 925

---

[3] In pertinent part, 10 Del. C. § 8119 provides: "No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained..."

F. Supp. 244, 248 (D. Del. 1996)(citing Deary v. Three Un-Named Police Officers, 746 F.2d 185, 197 n.16 (3d Cir. 1984)); see also Moody v. Kearney, 380 F. Supp. 2d 393, 397 (D. Del. 2005)(stating that the limitations period for a § 1983 claim begins to run at the time the plaintiff should have known about the injury).

Defendant contends that Plaintiff's cause of action accrued on December 31, 2003, the day on which the 2001 Eligibility List expired, and that the statute of limitations expired two years from this day, on December 31, 2005. (D.I. 64, at 18.) Plaintiff responds that his action is timely under either the discovery rule or under equitable tolling principles. (D.I. 67, at 22-28.) Defendant contends, however, that Plaintiff cannot rely on either the discovery rule or equitable tolling because Plaintiff failed to exercise reasonable diligence. (D.I. 64, at 16.) The Court will examine the applicability of each doctrine in turn.

## A. The Discovery Rule

Defendant argues that the discovery rule does not delay the running of the statute of limitations because Plaintiff knew, or should have known through the exercise of reasonable diligence, of his alleged injury on December 31, 2003. (D.I. 64, at 18-19.) According to Defendant, the expiration of the 2001 Eligibility List provided Plaintiff with clear notice that he would not be promoted. (Id.) Defendant contends that Plaintiff's deposition

12

testimony reveals that he was aware of the requisite facts regarding his potential action. Defendant further contends that Plaintiff's duty to use reasonable diligence to investigate why he was not promoted was triggered on December 31, 2003. (Id.)

Plaintiff responds that his claim accrued in April or May of 2005, when Plaintiff discovered his injury (i.e., his non-promotion because of alleged gender discrimination). (D.I. 67, at 23.) Plaintiff contends that he was not aware that a promotion opportunity had existed until April or May 2005, and therefore, he could not have possibly challenged or investigated his non-promotion until that time. (Id. at 25-26.) Specifically, Plaintiff contends that there was no way he could have known anything about Defendant's decision regarding his promotion until his conversation with Colonel Chaffinch. (Id.)

In the case of an alleged unlawful employment practice, the Third Circuit has summarized the discovery rule thusly:

> the accrual date is not the date on which the wrong that injures the plaintiff occurs, but the date on which the plaintiff discovers that he or she has been injured. There will, of course, be times when the aggrieved person learns of the alleged unlawful employment practice, for example, at the very moment the unlawful employment practice occurs; in such cases the statutory period begins to run upon the occurrence of the alleged unlawful employment practice. However, there will also be occasions when an aggrieved person does not discover the occurrence of the alleged unlawful employment practice until some time after it occurred. The discovery rule functions in this latter scenario to postpone the beginning of the statutory limitations period from the date when the alleged unlawful employment practice occurred, to the date when the plaintiff actually discovered he or she had been injured.

Oshiver, 38 F.3d at 1385-86 (internal citations omitted). The "polestar" of the discovery rule is not plaintiff's actual knowledge of his injury, but whether the knowledge was known or knowable, through the exercise of reasonable diligence, to plaintiff. Id.

The determination of when a reasonable person knew or should have known of the facts constituting a claim is a fact intensive inquiry. Cantor v. Perelman, 414 F.3d 430, 441 (3d Cir. 2005). Defendant contends that Plaintiff knew he would not be promoted to the rank of sergeant as of December 31, 2003, the day on which the 2001 Eligibility List expired. See Hood v. N.J. Dept. Of Civil Serv., 680 F.2d 955, 958-59 (3d Cir. 1982)(holding that the failure-to-promote claims of New Jersey police officers were time-barred because the 180-day limitations period had accrued upon the expiration of the promotion eligibility list, when the officers had clear notice they would not be promoted). As the Court has previously explained, however, with regard to the application of the discovery rule, "the Court does not read Oshiver to hold that a limitations period *always* begins at the moment a potential plaintiff learns he or she has been denied promotion, regardless of his or her knowledge of the motivations underlying the denial." (D.I. 22, at 7.)

There is evidence that the appointment of Corporal Sullivan as temporary NCOIC in May 2003 was in keeping with DSP policy due

14

to her seniority in the EPU (Chaffinch Dep. 22 at A37),

supporting Plaintiff's contention that he had no reason to

believe that he should have been named acting NCOIC. Further, it

appears that no written or verbal communication about the choice

of NCOIC was made. (Chaffinch Dep. 38-39 at B11.) Yet, as

Defendant notes, both Plaintiff and his wife testified that

Plaintiff was disappointed and frustrated he was not named acting

NCOIC. (Shockley Dep. 76 at A165; Tina Shockley Dep. 29 at

A168.) Defendant contends that Plaintiff could not have been

disappointed about the position unless he was aware that a

decision against his selection had been made. (D.I. 64, at 18.)

On the other hand, at the time the 2001 Eligibility List expired

in December 2003, no permanent NCOIC had been named or promoted

to sergeant, and Corporal Sullivan was still serving in a

temporary capacity. (Minner Dep. 152 at B178.)  Importantly,

though, it appears that Plaintiff never made any inquiry into why

he was not promoted from the 2001 Eligibility List. (Shockley

Dep. 49, 58, 62, 74-76 at A145, A149, A152, A163-165.) In light

of these circumstances, the Court concludes that there is a

genuine issue of material fact as to whether Plaintiff knew or

should have known, through the exercise of reasonable diligence,

of his alleged injury more than two years prior to August 2006,

when the present action was initiated. Because the date on which

Plaintiff knew or should have known the facts constituting his

15

claims is a material dispute of fact, summary judgment is not appropriate at this juncture.

## B. The Doctrine Of Equitable Tolling

Defendant contends that the statute of limitations cannot be equitably tolled because Plaintiff has presented no evidence that Defendant "actively misled" him about the reasons for his non-promotion. (D.I. 64, at 19-20.) Moreover, Defendant contends that even if Plaintiff was actively misled, Plaintiff has presented no evidence that the deception caused Plaintiff's late filing. (Id.) Finally, according to Defendant, there are no "extraordinary circumstances" that justify application of equitable principles. (Id. at 20-21.) Plaintiff contends that even if Plaintiff's claim did accrue in 2003, equitable tolling applies. Plaintiff argues that Defendant actively concealed the promotion opportunity, as well as the veto of that opportunity, and therefore, Plaintiff was lulled into inaction. (D.I. 67, at 27-28.) Thus, Plaintiff maintains that his claim is not barred by the statute of limitations.

A federal court may invoke the doctrine of equitable tolling to stop the statute of limitations from running when the date on which the claim accrued has already passed. Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000). This doctrine "can be applied to suits brought under the federal civil rights statutes when the state statute of limitations would otherwise frustrate federal

16

policy." Id. Although not an exclusive list, the Third Circuit has specifically noted three instances in which equitable tolling may be warranted: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Oshiver, 38 F.3d at 1387 (citing School Dist. of City of Allentown v. Marshall, 657 F.2d 16, 19-20 (3d Cir. 1981)). The Supreme Court has repeatedly recognized equitable tolling, but has cautioned that it should be invoked sparingly. Moody, 380 F. Supp. 2d at 397 (citing Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 240 (3d Cir. 1999)).

The Court concludes that the doctrine of equitable tolling is not implicated in this instance. Although Plaintiff has come forth with evidence that Defendant never informed Plaintiff about the existence of the promotion opportunity or her alleged veto of that opportunity, Defendant has also produced evidence that Plaintiff made no inquiries regarding his non-promotion. In the Court's view, the record facts in this action do not represent the type of active concealment or misleading required to invoke equitable tolling.

17

## II. Whether Defendant Is Entitled To Summary Judgment Because Plaintiff Has Failed To Establish A Prima Facie Case Of Gender Discrimination And/Or Evidence Of Pretext

Defendant contends she is entitled to summary judgment because Plaintiff cannot meet his burden of establishing a prima facie case of gender discrimination or the existence of a pretextual motive. (D.I. 64, at 22.) Plaintiff responds that both burdens have been met. (D.I. 67, at 30.)

When considering equal protection claims brought pursuant to 42 U.S.C. § 1983, the Court must use the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Stewart v. Rutgers, the State Univ., 120 F.3d 426, 432 (3d Cir. 1997)(applying McDonnell Douglas framework to plaintiff's allegations of racial discrimination brought under § 1983). Under this framework, a plaintiff has the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. In order to establish a prima facie case, Plaintiff must offer evidence of the following elements: (1) he is male; (2) he applied for and was he was qualified for a position for which Defendant was seeking applicants; (3) despite his qualifications, he was rejected; (4)the position was ultimately filled by a female. See id. at 802 (setting forth elements of prima facie case of racial discrimination under Title VII); Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318-

18

19 (3d Cir. 2000)(setting forth elements of prima facie case of gender discrimination under Title VII); Iadimarco v. Runyon, 190 F.3d 151, 157-64 (3d Cir. 1999) (explaining prima facie case requirement in reverse discrimination suits).

Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its conduct. Id. at 802. If the defendant produces a sufficient non-discriminatory reason for its actions, the burden shifts back to the plaintiff to demonstrate that the reasons articulated by the defendant are merely a pretext for discrimination. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). To defeat a motion for summary judgment, a plaintiff must point to some evidence from which the "factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. at 764. To accomplish this, a plaintiff can show a defendant's reasons are so weak, incoherent, implausible, or inconsistent such that they lack credibility. Id. at 765.

Reviewing the record in the light most favorable to Plaintiff, the Court concludes that Plaintiff has established a prima facie gender discrimination case. There is no dispute that Plaintiff is male, and that Corporal Sullivan, a female, was

named acting NCOIC, and was eventually promoted to sergeant and made permanent NCOIC. Defendant contends that Plaintiff cannot show that applicants were being sought for the NCOIC position in August 2003, and moreover, that Plaintiff can point to no evidence that he was as qualified or more qualified than Corporal Sullivan for the NCOIC position in August 2003. However, Plaintiff has produced evidence that the NCOIC position, and corresponding sergeant rank, became available upon Sergeant Montague's retirement in May 2003. Also, Plaintiff was eligible for promotion at that time because of his status on promotion Band D. With regard to Plaintiff being promoted to NCOIC, Colonel Chaffinch testified that Plaintiff "was an exceptional trooper," "fit the bill well," and "his qualifications [were] great." (Chaffinch Dep. 36-36 at B10.)

Further, the Court concludes that Defendant has met its burden of articulating a legitimate, non-discriminatory reason for why Plaintiff was not promoted, namely, that Sullivan was the most appropriate candidate for NCOIC in light of her seniority and experience. Finally, the Court finds that Plaintiff has adduced sufficient evidence so that a reasonable jury could find that Defendant's stated reasons for not promoting Plaintiff were a pretext for gender discrimination. At the time the NCOIC position became available, Plaintiff was on a band eligible for promotion and Corporal Sullivan was not. Nevertheless, Corporal

20

Sullivan served as NCOIC in a temporary capacity for approximately 29 months until the 2001 Eligibility List expired. Defendant also testified to numerous issues with Plaintiff's job performance as a basis for why he was not selected as NCOIC, such as late paperwork and a failure to properly complete advance work (Minner Dep. 165-168 at B182), but the performance evaluations in the record do not mention any such issues (see B63, B73). In fact, Sergeant Montague wrote that "I have received nothing but positive comments from [Defendant]" regarding Plaintiff. (Shockley Sponsorship Record at B63.)

Because Plaintiff has established a prima facie case and has adduced sufficient evidence upon which a reasonable factfinder could conclude that Defendant's articulated non-discriminatory reasons for not selecting him as NCOIC and promoting him to sergeant were pretextual, summary judgment will be denied.

### III. Whether Defendant Is Entitled To Qualified Immunity

Defendant contends that Plaintiff's suit is barred by the doctrine of qualified immunity. (D.I. 64, at 31.) Defendant argues that Plaintiff cannot demonstrate the existence of a constitutional violation because, even if Defendant considered gender in her decision to make Corporal Sullivan acting NCOIC, consideration of gender for the purpose of promoting equal employment does not violate the Constitution. (Id.) Further, Defendant argues that Plaintiff has failed to identify any

21

precedent which is sufficiently similar to the factual
allegations of this action such that Defendant could have been on
notice that her conduct was unconstitutional.  (Id. at 34.)

Plaintiff contends that the facts establish a constitutional
violation, and moreover, that Plaintiff's constitutional rights
were clearly established.  (D.I. 67, at 34.)  According to
Plaintiff, the precise conduct at issue need not have been
previously held unlawful because Defendant could not have
reasonably believed her conduct was lawful in light of decided
case law.  (Id. at 35-37.)  Specifically, Plaintiff contends that
a public employee's right to be free of gender discrimination has
been established in the Third Circuit since at least 1986.  (Id.
at 37-38.)

A public official is entitled to qualified immunity if the
official's conduct does not violate clearly established statutory
or constitutional rights that a reasonable person would have
known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Whether
an official is entitled to qualified immunity is a purely legal
question.  Acierno v. Cloutier, 40 F.3d 597, 609 (3d Cir. 1994).
In determining a question of qualified immunity, the court first
considers whether, when taken in the light most favorable to the
party asserting the injury, the factual allegations demonstrate a
constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201
(2001).  Next, the court considers whether "the right that the

defendant's conduct allegedly violates was a clearly established one, about which a reasonable person would have known." Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000). In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Exact factual correspondence between the right asserted and prior case law is not required, however, as "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741 (2002). Rather, application of qualified immunity turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Doe v. Delie, 257 F.3d 309, 318 (3d Cir. 2001) (internal quotes and citations omitted). In sum, the purpose pf qualified immunity is "to protect public officials from liability in situations involving extraordinary circumstances and where they neither knew nor objectively should have known the appropriate legal standard." Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)(citing Harlow, 457 U.S. at 819)).

The Court concludes, as a matter of law, that Defendant is not entitled to qualified immunity. As discussed previously, Plaintiff has adduced facts which demonstrate a constitutional

violation.[4]  In addition, "the general right . . . to be free of discrimination based upon sex on the workplace [] was well grounded in law and widely known to the public" well before 2003, when Defendant's alleged conduct took place.  See id. at 1479-80 (finding that based on clearly established law at the time, defendants should have understood that allowing and/or participating in the verbal harassment of plaintiffs based on gender violated plaintiffs' rights).  Although Plaintiff has not pointed to any precedents with precisely similar facts to the present action, in the Court's view, an objectively reasonable person in Defendant's position should have had notice that engaging in promotion practices based on gender discrimination would violate Plaintiff's rights.

## CONCLUSION

For the reasons discussed, Defendant's Motion For Summary Judgment will be denied.

An appropriate Order will be entered.

---

[4]The Court is not persuaded by Defendant's contention that no constitutional violation could have occurred because consideration of gender for the promotion of equal employment opportunity does not violate the Constitution.  The Supreme Court has recognized that "[s]ex classifications may be used to . . . promote equal employment opportunity."  U.S. v. Virginia, 518 U.S. 515, 533 (1996).  This is not a per se rule that gender classifications will never be found to violate the Constitution such that Defendant's alleged conduct could not amount to a violation of Plaintiff's rights.